1

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - - -X
3   UNITED STATES OF AMERICA,      : 15-CR-252 (PKC)
                                   :
4            Plaintiff,            :
                                   : United States Courthouse
5        -against-                 : Brooklyn, New York
                                   :
6   HERNAN LOPEZ,                  :
                                   : Monday, April 20, 2020
7            Defendant.            : 11:00 a.m.
    - - - - - - - - - - - - - - - -X
8

9      TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
          BEFORE THE HONORABLE PAMELA K. CHEN
10             UNITED STATES DISTRICT JUDGE

11            A P P E A R A N C E S:

12  For the Government:      RICHARD P. DONOGHUE, ESQ.
                            United States Attorney
13                          Eastern District of New York
                            271 Cadman Plaza East
14                          Brooklyn, New York 11201
                            BY:  SAMUEL P. NITZE, ESQ.
15                               M. KRISTIN MACE, ESQ.
                                 PATRICK HEIN, ESQ.
16                               KEITH D. EDELMAN, ESQ.
                                 Assistant United States Attorneys
17
    For the Defendant:      SPERTUS, LANDES & UMHOFER, LLP
18                          1990 South Bundy Drive
                            Suite 705
19                          Los Angeles, California 90025
                            BY:  JAMES W. SPERTUS, ESQ.
20                               MATTHEW D. UMHOFER, ESQ.
                                 SAMUEL A. JOSEPHS, ESQ.
21

22  Court Reporter:         DAVID R. ROY, RPR
                            225 Cadman Plaza East
23                          Brooklyn, New York 11201
                            drroyofcr@gmail.com
24
    Proceedings recorded by Stenographic machine shorthand,
25  transcript produced by Computer-Assisted Transcription.

Proceedings                                      2

1          (All parties appearing via teleconference.)

2          THE COURTROOM DEPUTY:  Criminal cause for bail

3    application, Docket Number 15-CR-252, United States of

4    America versus Lopez.

5          Before the parties state their appearances,

6    persons granted remote access to proceedings are reminded of

7    the general prohibition against photographing, recording, or

8    rebroadcasting of court proceedings.  Violation of these

9    prohibitions may result in sanctions, including removal of

10   Court-issued media credentials, restrictive entry to future

11   hearings, denial of entry to future hearings, or any other

12   sanctions deemed necessary by the Court.

13         The attorneys are reminded to state their names

14   prior to speaking on the record.

15         Will the parties please say their appearances for

16   the record, starting with the Government.

17         MR. NITZE:  Sam Nitze, Kristen Mace, Keith Edelman

18   and Patrick Hein for the Government.  This is Sam Nitze

19   speaking.

20         Good morning, Your Honor.

21         THE COURT:  Good morning.

22         MR. SPERTUS:  This is James Spertus for Hernan

23   Lopez, who is also on the call.  And also on the call are

24   Matthew Umhofer and Samuel Josephs.

25         THE COURT:  All right.  And good morning to all of

```
                         Proceedings                      3
```

1    you.

2              And, Mr. Lopez, I just want to confirm that you

3    are on the phone?

4              THE DEFENDANT:  Yes, I am, Your Honor.

5              THE COURT:  Okay.  And Mr. Spertus, does Mr. Lopez

6    waive his personal or in-person appearance for this bail

7    signing?

8              MR. SPERTUS:  He does, yes, Your Honor.

9              THE COURT:  Okay.  And then I guess if you can

10   tell me how it is that you know that Mr. Lopez is on the

11   phone?

12             MR. SPERTUS:  Your Honor, Matthew Umhofer is also

13   on the phone and will speak for Mr. Lopez from here on out.

14   I have spoken to Mr. Lopez extensively and I recognize his

15   voice.

16             THE COURT:  Okay.  And without waiving any

17   privilege, did you advise him about the number to call in

18   order to participate today with the time?

19             MR. UMHOFER:  He has been advised -- Your Honor,

20   this is Matthew Umhofer.

21             He is aware that today was the day that he needed

22   to call and had the number and all of that.  And actually,

23   Mr. Josephs will be speaking more today than I or

24   Mr. Spertus going forward.

25             THE COURT:  Okay.

Proceedings                                    4

1        And then we have a Pretrial officer also present.

2        Is that right?

3        MR. MOORE:  Yes.  Good morning, Your Honor.  This

4    is Ramel Moore from Pretrial Services.

5        THE COURT:  All right.  Good morning to you,

6    Mr. Moore.

7        As everyone knows, we are here today for the bond

8    signing.  I have been provided with a written copy of the

9    bond.  And let me summarize briefly what the bond -- well,

10   let me summarize the main portions of the bond, which has

11   been signed by a number of suretors.  And in a moment, I

12   will confirm that they are also here today.

13       But the bond does provide for -- well, it is in

14   the amount of, rather, $15 million.  The defendant will be

15   subject to geographic restrictions, or travel restrictions.

16   Ostensibly, or primarily, he will be restricted to remaining

17   in the Central District of California and New York City,

18   except as approved with at least two days' advance notice by

19   Pretrial Services.  He will also be subject to random visits

20   by Pretrial Services, as well as reporting to

21   Pretrial Services as they direct.

22       This is a secured bond, so there are at least

23   three suretors who have signed the bond so far:  August

24   Martin, Scott Velasquez, and Wayne Fastow.

25       And this is to the court reporter.  I am assuming

Proceedings                                    5

1   that you have all of those spellings, but you can stop me if

2   at any point you need me to spell it; or you feel free stop

3   anyone else, as well.

4           I will also note that there is a curfew that

5   applies here to Mr. Lopez.  He must remain at home between

6   the hours of 10:00 p.m. and 6:00 a.m. every day.  He can

7   apply to Pretrial Services for any exceptions, but

8   obviously, he would have to give them advance notice and get

9   approval because the boxes are checked as 10:00 to 6:00, or

10  as directed by Pretrial Services.  So obviously, this

11  contemplates some different schedule being approved by

12  Pretrial Services.

13          All right.  And then there are other conditions,

14  but they are set forth in the bond.  I just want to

15  summarize the main ones.  There is property posted, which is

16  owned based on what is before me by three of the suretors,

17  and that is indicated in Attachment B.

18          Now, before I have the suretors identify

19  themselves, is there anything else that I should advise or

20  confirm right now with the parties?

21          Mr. Nitze?

22          MR. NITZE:  Your Honor, I think just once the

23  defendant and the suretors are sworn, just to confirm that

24  they have been advised of all the conditions and have read

25  and understood the entirety of the bond package.

```
                        Proceedings                    6
```

1           THE COURT:  Absolutely.

2           Anything that you think, Mr. Josephs, I should

3    advise the parties before I turn to the suretors?

4           MR. JOSEPHS:  This is Sam Josephs.  No,

5    Your Honor.

6           THE COURT:  All right.

7           MR. JOSEPHS:  Thank you.

8           THE COURT:  So the suretors that I understand are

9    on the line are Mr. August Martin.

10          Will you confirm that you are on the conference,

11   sir?

12          MR. MARTIN:  Yes, Your Honor.  This is August

13   Martin.

14          THE COURT:  Okay.  And next, Scott Velasquez.

15          Are you also here?

16          MR. VELASQUEZ:  Yes, Your Honor, I am.  This is

17   Scott Velasquez.

18          THE COURT:  Okay.

19          Wayne Fastow?

20          MR. FASTOW:  Yes, Your Honor, I am present.

21          THE COURT:  Okay.

22          And James DeMayo, D-E-M-A-Y-O, capital M.

23          Is that right?

24          MR. DEMAYO:  Yes.

25          THE COURT:  Okay.

```
                        Proceedings                        7
```

1           I do want to ask one questions of the lawyers.

2    Mr. DeMayo's signature is not on the bond that I have; is

3    that correct?  And I know that a couple of versions were

4    sent later, but I think they were all the same with respect

5    to the signers on the bond.

6           Mr. Nitze?

7           MR. NITZE:  Yes, Your Honor, that's correct.

8    Mr. DeMayo, who is a bond agent for Mr. Josephs, will -- if

9    I miss important facts here, he can -- he will jump in.  But

10   he's a bond agent.

11          THE COURT:  Okay.

12          MR. NITZE:  And Attachment C is the form by which

13   he has signed on for his company to be liable for $175,000.

14   And as I understand it, there is a bond form, an additional

15   form that will be filed as soon as the bond itself has been

16   filed.

17          Mr. Josephs, did I get that right?

18          MR. JOSEPHS:  This is Sam Josephs.  That's

19   correct.

20          Your Honor, we just wanted Mr. DeMayo on the phone

21   in case the Court had any questions about Attachment C and

22   to confirm the signature on Attachment C.  And that's

23   correct, there will be a Power of Attorney Form that will be

24   filed with the Clerk of the Court that is referenced in

25   Attachment C by Mr. DeMayo's company.

```
                    Proceedings                    8
```

1          THE COURT:  Okay.  And let me confirm, then.  In

2    Attachment C there are only two handwritten signatures?  One

3    purports to be the defendant's, and then the other one

4    simply says, Attorney in Fact.

5          Is that Mr. DeMayo's signature?

6          MR. JOSEPHS:  This is Sam Josephs --

7          MR. DEMAYO:  Yes.

8          MR. JOSEPHS:  I'm sorry.  Yes, Your Honor.  He is

9    the signee.

10         THE COURT:  Okay.  That was Mr. Josephs confirming

11   that.

12         Is that right?

13         MR. JOSEPHS:  Yes, Your Honor.

14         THE COURT:  Okay.  Thank you.

15         So let me have all of the four individuals, and I

16   will include you, Mr. DeMayo, in that, the three suretors

17   and then Mr. DeMayo be sworn in and given an oath.

18         THE COURTROOM CLERK:  Okay.  Starting with

19   Mr. August Martin --

20         THE COURT:  Wait.  YiQing, you could just recite

21   the whole thing and then I will confirm with them

22   individually.

23         THE WITNESS:  Okay.

24         THE COURT:  Thank you.

25

```
                        Proceedings                    9
```

1  A U G U S T   M A R T I N,

2  S C O T T   V E L A S Q U E Z,

3  W A Y N E   F A S T O W,

4  AND   J A M E S   D E M A Y O,

5          called as witnesses having been first duly

6          sworn/affirmed, were examined and testified as

7          follows:

8          THE COURTROOM CLERK:  Please state and spell your

9  name for the record.

10          THE COURT:  Okay.  So first Mr. Martin.  Do you

11  swear to tell the truth?

12          MR. MARTIN:  I do.

13          THE COURT:  Okay.

14          And the spelling we will dispense with, because I

15  think the court reporter has all of them.

16          Mr. Velasquez, will you confirm?

17          MR. VELASQUEZ:  I do.

18          THE COURT:  And Mr. Fastow?

19          MR. FASTOW:  I do.

20          THE COURT:  And Mr. DeMayo?

21          MR. DEMAYO:  I do, Your Honor.

22          THE COURT:  Okay.

23          Now, let me direct this question to the defense

24  attorneys.  Can one of you confirm for me the identities of

25  the individuals who have just identified themselves as the

Proceedings                                        10

1    suretors and then Mr. DeMayo, and explain to me how it is

2    that you can confirm their identities?

3              MR. JOSEPHS:  Your Honor, this is Sam Josephs.  I

4    have spoken extensively to all four of the sureties that are

5    on the call.  I recognize all of their voices, and I have

6    reviewed photos of the driver's licenses for Mr. Martin,

7    Mr. Fastow, and Mr. Velasquez.  Mr. DeMayo, I've known for

8    years, and I've spoken to him extensively on the phone.  And

9    I have provided all four of them with the call-in

10   information for today's call.

11             THE COURT:  Okay.  And I'm curious, how did you

12   accomplish the signatures?  Was it done electronically or

13   via mail, in *seriatim?*

14             MR. JOSEPHS:  I was done via e-mail.  The forms

15   were printed, signed, scanned, and e-mailed back to me,

16   Your Honor.

17             THE COURT:  Okay.  And before all of that, you

18   confirmed by looking at their driver's licenses that they

19   are who they say they are before they signed?

20             MR. JOSEPHS:  I did, Your Honor.

21             THE COURT:  Okay.

22             All right.  Now, let me advise the suretors, and

23   obviously you, Mr. DeMayo, as well since you are signing

24   this bond on behalf of the company.

25             And, Mr. DeMayo, let me ask you.  The company,

```
                       Proceedings                    11
```

1   just to confirm, is Allegheny Casualty Company.

2           Is that right?

3           MR. DEMAYO:  Yes, it is, Your Honor.

4           THE COURT:  Okay.

5           All right.  And first, Mr. Martin, let me ask you.

6   What is your relationship to this defendant?

7           MR. MARTIN:  A friend.

8           THE COURT:  Okay.  And how long have you been

9   friends?

10          MR. MARTIN:  Twenty years.

11          THE COURT:  All right.

12          And, Mr. Velasquez, same question.  How do you

13  know Mr. Lopez?

14          MR. VELASQUEZ:  Oh, we were partners.

15          THE COURT:  Business or --

16          MR. VELASQUEZ:  (Indiscernible response.)

17          THE COURT:  I'm sorry?

18          MR. VELASQUEZ:  Yeah.

19          THE COURT:  I'm sorry.  Did you say personal

20  partners, domestic partners?

21          MR. VELASQUEZ:  Yes, Your Honor.  This is Scott

22  Velasquez.

23          THE COURT:  Okay.  And how long have you known

24  each other?

25          MR. VELASQUEZ:  A little over two years.

```
                    Proceedings                    12
```

1           THE COURT:  Okay.

2           And to go back to you, Mr. Martin.  How often do

3    you see Mr. Lopez?

4           MR. MARTIN:  Probably every few weeks.

5           THE COURT:  Okay.  Now, turning to Mr. Fastow.

6    How do you know Mr. Lopez?

7           MR. FASTOW:  We were also friends 20 years --

8           THE COURT:  Okay.

9           MR. FASTOW:  -- or for 20 years.

10          THE COURT:  Twenty years?

11          MS. FASTOW:  Yes.

12          THE COURT:  Okay.  And how often do you see him

13   currently?

14          MR. FASTOW:  Every several weeks, I would think,

15   Your Honor.

16          THE COURT:  Okay.

17          And now turning to Mr. DeMayo.  Mr. DeMayo, are

18   you the attorney for Allegheny Casualty Company?

19          MR. DEMAYO:  No.  I'm an associate in business for

20   them.

21          THE COURT:  An appointed agency, did you say?

22          MR. DEMAYO:  Yes.

23          THE COURT:  Okay.  And what does that mean

24   exactly, if you don't mind me asking?

25          MR. DEMAYO:  We're a present value insurance

```
                        Proceedings                    13
```

1   company who represents them for bail for the state of

2   California, but also for federal court.

3            THE COURT:  I see.

4            Okay.  And so you're, in effect, a bonds --

5            MR. DEMAYO:  Exactly.

6            THE COURT:  -- you work for a bond company?

7            MR. DEMAYO:  That's correct.

8            THE COURT:  Okay.  And you're pledging on behalf

9   of whom, the $175,000?

10           MR. DEMAYO:  On behalf of -- the name is ████████

11   ██████████████    [sic].

12           THE COURT:  Okay.  Why don't you spell that again,

13   please.

14           MR. DEMAYO:  I think it's -- it's a -- ████████████

15   ████████████████████████████████████████████████████████

16   ██████████████████████████████    [sic].

17           THE COURT:  Okay.

18           So let me ask the court reporter?  Did you get

19   that, David?

20           THE COURT REPORTER:  Yes, I did, Your Honor.

21   Thank you.

22           THE COURT:  Okay.  Thank you.

23           All right.  Let me turn first to the three

24   suretors and make sure that you understand the obligations

25   and the risks that you are undertaking by signing this bond

```
                          Proceedings                    14
```

1   for your friend and partner.  As I understand, this is a

2   $15 million bond, and it's secured by your properties.  What

3   it means, though, is that if Mr. Lopez does not appear in

4   court as required or follow any of the conditions in the

5   bail bond that you have signed, any single one of you could

6   be held responsibile for the entire $15 million amount of

7   the bond.

8           Do you understand that, Mr. Martin?

9           MR. MARTIN:  I do understand that.

10          THE COURT:  Mr. Velasquez.

11          MR. NITZE:  Your Honor?

12          THE COURT:  Oh, go ahead.

13          MR. NITZE:  I'm sorry to interrupt.  This is Sam

14   Nitze.

15          THE COURT:  Yes, go ahead, Mr. Nitze.

16          MR. NITZE:  I just wanted to note that the three

17   sureties are dis-situated somewhat differently, and there is

18   an asterisk on the bond form next to the face amount.

19   You'll see that it says, As limited on Attachment B.

20          THE COURT:  Oh, okay.

21          MR. NITZE:  And I would just note, Mr. Martin, as

22   you have indicated, he is on for the face amount and has

23   posted property and partial security.

24          Mr. Velasquez also is on for the face amount

25   without property.

Proceedings                                        15

1           THE COURT:  Oh, okay.

2           MR. NITZE:  And, Mr. Fastow, however, Your Honor,

3    is on for the amount of the posted property but limited to

4    that.

5           THE COURT:  Okay.  Thank you for clarifying that.

6    Actually I was going to ask why Mr. Fastow wasn't listed

7    above.

8           Okay.  So let me modify what I said earlier.  This

9    bond is somewhat unusual in that it makes some distinctions

10   between the different suretors.  All right.  So the face

11   value of the bond, as we have discussed, is $15 million.

12   And the conditions generally, or the risks generally are the

13   same in terms of the potential triggers.  The bottom line is

14   that Mr. Lopez has to comply with every single term on this

15   bond.  No condition -- or I don't view any condition as more

16   important than any other.  So not only must he appear in

17   court as required, but he must follow all of the specific

18   conditions that are set forth in the written bond.

19          So let me confirm for you -- or let me confirm for

20   myself, rather, first with you, Mr. Martin.  Did you review

21   the bond with all of the conditions in Attachments A, B, and

22   C before you signed it?

23          MR. MARTIN:  I did.

24          THE COURT:  Mr. Velasquez?

25          MR. VELASQUEZ:  Yes, Your Honor, I did.

Proceedings                                              16

1          THE COURT:  And Mr. Fastow?

2          MR. FASTOW:  Yes, I've reviewed it all.

3          THE COURT:  Okay.  So it is very important that

4    you understand that if Mr. Lopez violates any condition,

5    each of you could be in serious financial risk.  Now, the

6    extent of that risk is somewhat different for each of you

7    and the nature of it, you know, is somewhat different for

8    each of you.

9          As Mr. Nitze pointed out, in Attachment B, it

10   makes Mr. Martin and Mr. Velasquez potentially liable

11   jointly and severally, meaning by themselves or together,

12   for the full $15 million appearance amount.

13         Do you understand that, Mr. Martin?

14         MR. MARTIN:  I do, Your Honor.  This is August

15   Martin.

16         THE COURT:  And you, Mr. Velasquez?

17         MR. VELASQUEZ:  I do, Your Honor.

18         THE COURT:  Okay.

19         MR. VELASQUEZ:  This is Scott Velasquez.

20         THE COURT:  The important thing that you should

21   understand is that the Government could come after one of

22   you for the whole amount or both of you, but that is up to

23   them how they want to proceed.  And that you are in theory

24   putting yourself in risk of a $15 million judgment.

25         Do you understand that, Mr. Martin?

Proceedings                                        17

1          MR. MARTIN:  I do.  I do understand that,
2   Your Honor.
3          THE COURT:  And you, Mr. Velasquez?
4          MR. VELASQUEZ:  I do.
5          THE COURT:  Okay.
6          All right.  Now, in addition, Mr. Fastow, you have
7   signed on along with the other two suretors by posting
8   property, which I assume are your personal residences or
9   property that you own.  You, Mr. Fastow, along with the
10  other two suretors, are at risk of having the Government go
11  after you for a portion of this appearance bond.
12          And, apparently, it would be I think, and correct
13  me if I'm wrong, Mr. Nitze, $15 million less $175,000?
14          Is that correct?
15          MR. FASTOW:  That's my understand.  This is Wayne
16  Fastow.
17          THE COURT:  Thank you.  Okay.  But hold on.
18          But, Mr. Nitze, am I reading Attachment B
19  correctly, that the $15 million bond, at least as to
20  Mr. Fastow, could be or would be $175,000 less because of
21  this surety bond that is being posted?
22          MR. NITZE:  Well, no, Your Honor.  Mr. Fastow
23  would be on for the property that he has posted.  In other
24  words --
25          THE COURT:  But he has --

```
                        Proceedings                    18
```

1          MR. NITZE:  -- the security that he has posted is

2     the value of his property, and that's the extent of his

3     potential liability.

4          THE COURT:  Okay.  Thank you.

5          All right.  So unlike the other two suretors,

6     Mr. Martin and Mr. Velasquez, you, Mr. Fastow, are at least

7     protected to some extent in terms of your exposure because

8     it is limited to the value and the equity that you have in

9     your property.

10          Do you understand that?

11          MR. FASTOW:  I do, Your Honor.  This is Wayne

12     Fastow.

13          THE COURT:  Okay.  But importantly, all the

14     suretors should understand that if Mr. Lopez were to violate

15     any condition of his bond, the Government could seize the

16     properties you have posted and sell them.  Do you understand

17     that Mr. -- and there could be some limitations on that, but

18     nonetheless, theoretically they could take the property that

19     you have posted to satisfy the bond.

20          Do you understand that, Mr. Martin?

21          MR. MARTIN:  I understand, Your Honor.

22          THE COURT:  Mr. Velasquez?

23          MR. VELASQUEZ:  I understand, Your Honor.

24          THE COURT:  Okay.  And Mr. Fastow?

25          MR. FASTOW:  I understand, Your Honor.

1          THE COURT:  Okay.

2          Then let me turn now to Mr. DeMayo.

3          MR. DEMAYO:  Yes, Your Honor.

4          THE COURT:  You said you have now been retained in

5     effect to post this $175,000 bond for -- and tell me his

6     last name again.

7          MR. DEMAYO:  It's ██████████ -- or I'm sorry.

8     ███████.

9          THE COURT:  Okay.  And Mr. Nitze or Mr. Josephs,

10    explain to me, then, what the nature of this bond is and who

11    that individual is.

12         MR. JOSEPHS:  Your Honor, this is Sam Josephs.  I

13    can explain.

14         THE COURT:  All right.  Thank you.

15         MR. JOSEPHS:  Attachment C is the corporate surety

16    bond that is being posted with the Court and secured by

17    property of a third party, and the third party is the

18    individual that Mr. DeMayo described.

19         THE COURT:  Okay.  So I have never dealt with

20    something like this.  Do I need to advise someone other than

21    Mr. DeMayo about the risk posed by signing on to this bond

22    or posting this security?

23         MR. NITZE:  This is Sam Nitze.  No, I don't

24    believe so, Your Honor, because the company itself has taken

25    on the liability and then it would be sort of down the

Proceedings                                          20

1   chain, so to speak, for them to pursue whatever backing they

2   might have for it.

3            THE COURT:  Okay.  So I don't even need to advise

4   a corporate board member or anything like that?

5            MR. NITZE:  I think so long as Mr. DeMayo has been

6   advised, that is sufficient.

7            THE COURT:  Okay.

8            So, Mr. DeMayo, do you understand that if

9   Mr. Lopez fails to comply with all of the conditions of his

10  bond, as well as appear in court as required, the $175,000

11  that has been posted will be forfeited?

12           Do you understand that?

13           MR. DEMAYO:  Yes, Your Honor.

14           THE COURT:  Okay.

15           MR. DEMAYO:  Yes, Your Honor, I do understand

16  that.

17           THE COURT:  All right.  And you have an obligation

18  to advise the client, or whoever purchased this surety bond

19  of that.

20           Is that correct?

21           MR. DEMAYO:  Yes, Your Honor.

22           THE COURT:  And you have done that?

23           MR. DEMAYO:  Yes, Your Honor.  We -- we have, and

24  I think also the defendant's attorneys have as well.

25           THE COURT:  Okay.  And before signing

Proceedings                              21

1   Attachment C, were you provided a copy of the bond along

2   with Attachments A and B?

3              MR. DEMAYO:  Yes, Your Honor, I have them here as

4   well.

5              THE COURT:  All right.  So you are aware of all of

6   the conditions that Mr. Lopez is subject to?

7              MR. DEMAYO:  Yes.

8              THE COURT:  Okay.

9              All right.  So based on my colloquy with the

10  parties and the representations of the attorneys, I do find

11  that the suretors are fully informed of the consequences of

12  their endorsement of the bond.  I am going to endorse this

13  bond.

14             Now, I believe I previously advised the defendant

15  of the consequences of this bond.  Mr. Josephs or Mr. Nitze,

16  do you think I need to advise the defendant any further at

17  this time?

18             MR. NITZE:  Your Honor, this is Sam Nitze.  I

19  think it would be worth swearing in the defendant and

20  notifying him again, or at least just confirming his

21  understanding of the conditions you have referenced.  And I

22  say that because before we did not have an executed bond

23  form, hadn't confirmed signature, and also the mix and

24  nature of the partial security was still subject to being

25  sorted out.

```
                        Proceedings                    22
```

1            THE COURT:  Okay.  Sure.

2            MR. NITZE:  And so based on that, I think it would

3    be worthwhile.

4            THE COURT:  Okay.  Fair enough.

5            So, Mr. Lopez, I am going to have you sworn in.

6            THE DEFENDANT:  Yes, Your Honor.

7    **H E R N A N    L O P E Z**,

8            called as a witness having been first duly

9            sworn/affirmed, was examined and testified as

10           follows:

11           THE COURTROOM CLERK:  Please state your name for

12   the record.

13           THE DEFENDANT:  Hernan Lopez.

14           THE COURTROOM CLERK:  Thank you.

15           THE COURT:  Okay.  So, Mr. Lopez, have you signed

16   this appearance bond on the bottom of the first page?

17           THE DEFENDANT:  Yes, I have, Your Honor.

18           THE COURT:  Okay.  And did you do so on or

19   about -- well, when did you do that actually?

20           THE DEFENDANT:  I believe it was -- it was this

21   weekend, either Saturday or Sunday.  I think it was

22   Saturday.

23           THE COURT:  Okay.  And at the time that you signed

24   it, did you review all of the conditions in it yourself

25   and/or with your attorney?

Proceedings                                          23

1          THE DEFENDANT:  I reviewed them myself and my

2    attorneys had advised me of the conditions before that.

3          THE COURT:  Okay.  And did you do that

4    telephonically?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  So you are aware, are you not,

7    that this is a $15 million secured bond; that you have three

8    individuals who have signed on as suretors; as well as a

9    $175,000 bond that has been posted, I gather, by a third

10   party, perhaps someone related to your company.

11         Are you aware of that?

12         THE DEFENDANT:  I am, Your Honor.

13         THE COURT:  Okay.  Are you also aware -- and,

14   again, I am just summarizing the main points -- that your

15   travel will be restricted or your whereabouts will be

16   restricted to the Central District of California and

17   New York City unless approved with two-days advanced notice

18   by Pretrial Services to leave those areas?

19         MR. SPERTUS:  I am, Your Honor.

20         THE COURT:  All right.  And are you also aware

21   that you will be subject to random visits by

22   Pretrial Services, and that you will have to report as

23   directed by Pretrial Services?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Have you already surrendered your

Proceedings                                                    24

1    passport as required by this bond?

2              THE DEFENDANT:  I have, Your Honor.

3              THE COURT:  Okay.  In addition, you will be

4    subject to curfew between 10:00 p.m. to 6:00 p.m. or as

5    directed by Pretrial Services.

6              Are you aware of that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  All right.  And then you will also be

9    required to report to Pretrial Services any conversion of

10   any portion of your ownership; stake in Wondery, spelled

11   W-O-N-D-E-R-Y, into cash or any other form or liquid asset?

12             You are aware of that condition as well, are you

13   not?

14             THE DEFENDANT:  I am, Your Honor.

15             THE COURT:  All right.  And you are also directed

16   not to have any association or contact with your

17   co-defendants or any individual employed by or associated

18   with any sports marketing company identified in the

19   indictment, which would include *Torneos,* Full Play, and the

20   Traffic Group, or their subsidiaries or affiliates;

21   CONCECAF, or any affiliated or constituent entity; CONMEBOL,

22   and any affiliated or constituent entity; FIFA, and any

23   affiliated or constituent entity; and finally,

24   *21st Century Fox*, or any currently or formerly affiliated

25   entity regarding, for the context, has to be that you're not

Proceedings                                                      25

1   allowed to do, has to be about the allegations in the

2   superseding indictment.

3          Do you understand that no-contact or association

4   provision?

5          THE DEFENDANT:  I do, Your Honor.

6          THE COURT:  Okay.  It is important to note that

7   you're not precluded -- or your counselor, rather, is not

8   precluded from contacting any of these individuals in

9   connection with your defense.  And it does not preclude a

10  co-defendant meeting as part of a joint defense agreement.

11         Do you understand that?

12         THE DEFENDANT:  I do.

13         THE COURT:  Okay.  So lastly as I said before,

14  what is most important for you to understand is that if you

15  violate any term of this bond, and there are quite a few as

16  you can appreciate, you will both be subjecting your friends

17  to financial ruin and the seizure of their property, and you

18  yourself will have issued against you a $15 million

19  judgment, as well as potentially incurring other criminal

20  charges such as bail jumping.

21         So do you understand that?

22         THE DEFENDANT:  I do, Your Honor.

23         THE COURT:  All right.  Do you have any questions

24  at all about the bond that you have signed?

25         THE DEFENDANT:  I don't, Your Honor.  I've

1   reviewed them extensively with my attorney.

2           THE COURT:  Okay.  And I should have added that

3   obviously if you fail to comply with any condition, this

4   surety bond will be executed against by the Government for

5   $175,000.

6           Do you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Okay.

9           All right.  Is there anything else, Mr. Nitze,

10  that I ought to advise or confirm with Mr. Lopez?

11          MR. NITZE:  No.  From the Government's

12  perspective, that is sufficient.  Thank you, Your Honor.

13          THE COURT:  Okay.

14          All right.  And you, Mr. Josephs?

15          MR. JOSEPHS:  No, Your Honor.  Thank you.

16          THE COURT:  All right.  I think that covers

17  everything that we need to do today.  This bond will be

18  entered pursuant to the normal policy.  The private

19  information will be redacted in the publicly filed version,

20  you know, such as addresses of homes that are being posted,

21  et cetera.

22          I think contrary to what we did last time,

23  Mr. Nitze will take care of that pursuant to our standard

24  procedures unless there is some reason that the parties want

25  to get together to propose additional redactions to the

Proceedings                          27

1   public version.

2           MR. NITZE:  That's fine from the Government's

3   perspective.  I defer to Mr. Josephs, if he thinks it would

4   be worthwhile to confirm something, we'll be happy to join

5   in that effort also.

6           MR. JOSEPHS:  No, Your Honor.  This is Sam

7   Josephs.  That's fine as well.

8           THE COURT:  Okay.  So just rest assured, we will

9   take out the addresses, but otherwise, the other terms of

10  the bond will be posted in the public version.  Okay?

11          Anything else from the Government?

12          MR. NITZE:  Nothing from the Government.  Thank

13  you.

14          THE COURT:  Mr. Josephs?

15          MR. JOSEPHS:  No, Your Honor.  Thank you.

16          THE COURT:  All right.

17          Is there anything from the suretors?  Did anyone

18  want to say anything before we get off the line?

19          Mr. Martin?

20          MR. MARTIN:  I have nothing to add.  Thank you so

21  much, Your Honor.

22          THE COURT:  Mr. Velasquez?

23          (No audible response.)

24          THE COURT:  Oops.  I don't think you unmuted,

25  Mr. Velasquez.

Proceedings                                  28

1          MR. VELASQUEZ:  Oh, I'm sorry.  No, Your Honor.

2     Thank you.

3          THE COURT:  And Mr. Fastow?

4          MR. FASTOW:  No other questions.  Thank you,

5     Your Honor.

6          THE COURT:  Mr. DeMayo, do you have any other

7     questions?

8          MR. DEMAYO:  No other questions, Your Honor.

9     Thank you.

10         THE COURT:  Okay.

11         And Pretrial Services, did you have anything you

12    wanted to say or ask?

13         MR. MOORE:  No, Your Honor.  Other than to know

14    who to fax over to today an unredacted copy of the bond,

15    please.

16         THE COURT:  Okay.  Good.

17         Thank you everyone and be safe.

18         ALL PARTIES ON THE LINE:  Thank you.

19         THE COURT:  Bye-bye.

20         (Matter concluded.)

21                        --ooOoo--

22

23    *I (we) certify that the foregoing is a correct transcript*
      *from the record of proceedings in the above-entitled matter.*

24

25    */s/ David R. Roy*                  *21st Day of April, 2020*
           *DAVID R. ROY*                          *Date*

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*