UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HERNAN LOPEZ and<br>CARLOS MARTINEZ,<br><br>　　　　　Defendants. | CASE NO. CR 15-cr-252 |

**DEFENDANTS HERNAN LOPEZ AND CARLOS MARTINEZ'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL (1) PRODUCTION OF MATERIALS PURSUANT TO *BRADY* AND FED. R. CRIM. P. 16 AND (2) RESPONSES TO DISCOVERY REQUESTS**

**SPERTUS, LANDES & UMHOFER, LLP**
Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs

**McCOOL LAW PLLC**
Steven J. McCool
Julia M. Coleman

Ramon A. Abadin

Michael T. Cornacchia

## **INTRODUCTION**

The government's opposition makes clear that it fundamentally misunderstands its obligations under *Brady* and Rule 16 in ways that infect its entire approach to discovery in this case. There is no better example of the government's flawed approach than its description of Exhibit T to Mr. Lopez and Mr. Martinez's Motion. Exhibit T is an internal email from a high-level Torneos executive, who the government alleges is a co-conspirator of Messrs. Lopez and Martinez, but who wrote during the alleged conspiracy, "I am surprised that Hernan Lopez has learned about this[,]" referring to the fact that Mr. Lopez had just learned, through Fox employees auditing T&T (*see* opp. at 13) that T&T had made certain payments that did not have corresponding invoices. The Torneos executive then clearly expressed concern over said audit initiated by Mr. Lopez's employer, Fox, and Mr. Lopez's role in it. The exculpatory value of the email is obvious on its face—it clearly suggests that Mr. Lopez and Mr. Martinez learned things about Torneos's control of T&T in ways that concerned the actual conspirators. But the government takes Mr. Lopez's act of good corporate governance—raising an audit deficiency with a joint venture partner—and twists it to "support[] the conclusion that Lopez had a detailed level of knowledge of undocumented payments, at least as of October 2014." (Opp. at 14 n.5.)

This is not simply the defense "view[ing] a document differently than the government does" (Opp. at 14); it reflects the government's misunderstanding of *Brady*. The government strains credulity when it twists an email wherein someone who signed off on alleged bribe payments (*see* Gov't Ex. 514D) expresses surprise that Mr. Lopez had that learned of certain payments that the government would have the jury believe Mr. Lopez knew to be bribery payments, and then represents to the Court that the email is not favorable evidence to Mr. Lopez. The government's position on this evidence shows that its blanket representations that it understands and will comply with its *Brady* obligations are hollow.

The government's misunderstanding of *Brady* rightly concerns the defense for two reasons: (i) this willful misreading of an exculpatory email raises serious doubts about the government's affirmation that it is not aware of any *Brady* materials in its productions; and (ii) the government has refused to provide a single witness statement in this case before some undisclosed date prior to trial, despite its obligation to disclose *Brady* contained within any of those statements now.

The government cannot sidestep these issues by assailing the defense's meet-and-confer efforts because the defense sent the government at least seven letters asking it, very directly, about the issues raised in their Motion.  After receiving non-responsive replies to those letters, the defense sent the government thirteen straightforward questions asking for a "yes" or "no" response.  The government refused to answer those questions; instead it responded by saying it "will comply with [its] continuing duty to disclose all discoverable material," and gave as an example of non-discoverable material "emails between counsel to schedule telephone calls." The government now highlights that example as representative of all the materials that it refuses to produce, and, in so doing, trivializes the defense's request for all materials produced by Torneos and Fox.[1]

The issue remains: the government has not explained why it is withholding documents from Torneos and Fox—the two companies at the heart of the government's allegations—while

---

[1] For the very first time, the government in its Opposition states it "does not intend to withhold any historical documents produced by either Fox or Torneos," (Opp. at 7) a position at odds with its prior representation that it possesses "materials from Fox, Torneos, and others that were obtained by the government before and after the indictment was returned" and that "[t]hese materials include documents that plainly are not discoverable – such as emails between counsel to schedule telephone calls, to give *one example*." (Umhofer Decl. Ex. X) (emphasis added.)

prioritizing the production of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *that were not obtained from and in no way relate to Mr. Lopez or Mr. Martinez and have absolutely nothing to do with this case*. Instead of recognizing and conceding its failure in this regard, the government wants credit for being over-inclusive in its discovery productions because it produced irrelevant ▇▇▇ materials.

Messrs. Lopez and Martinez are seeking straightforward answers: (1) is there *Brady* material in the millions of documents the government has produced to date, and in the millions more it represents it will produce; and (2) what documents has the government determined it does not need to produce from Fox, Torneos, and otherwise. The Court should grant the Motion in its entirety, so the government will be compelled to provide these answers.

## ARGUMENT

A. **The Defense Spent Months Attempting To Confer With The Government About The Issues Raised In The Motion.**

The government argues that the Court should deny the Motion because the defense did not adequately confer with the government. That is false. The defense spent a significant amount of time drafting specific, direct letters asking the government whether it was withholding documents it received from Fox and Torneos, and whether it would identify *Brady* materials in its productions. Indeed, the defense made **seven such attempts** and the government continuously responded with varying degrees of ambiguity. For the Court's convenience, attached is a chart highlighting the specific defense requests and the government's responses (Ex. A), demonstrating that the defense diligently complied with its obligations to meet and confer.

3

**B.     The Government Has Incorrectly Approached Its *Brady* and Rule 16 Obligations.**

**1.     The government's misapplication of *Brady* threatens the right to a fair trial.**

The government does not understand *Brady*. The government incorrectly asserts that ▇ ▇ statement and Exhibit T are not *Brady* because (a) neither document is materially favorable to the defense, and (b) with respect to ▇ statement, it is inadmissible. (Opp. at 12-14.) Given these assertions, the defense's concern is that the government is incapable of determining whether its productions or any witness statements contain *Brady* that must be promptly disclosed to the defense.

The law is clear: favorable evidence is material if "there is a reasonable likelihood that disclosure of the evidence would have . . . put the case in such a different light as to undermine confidence in the outcome." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (citing *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995)). Prior to trial, this means that "prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial." *See United States v. Bundy*, 968 F.3d 1019, 1033 (9th Cir. 2020) ("The retrospective definition of materiality is appropriate only in the context of appellate review . . . .") (internal quotation marks omitted); *see also United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("[T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial.").

▇ statements and Exhibit T clearly constitute *Brady* material. ▇ told the government: ▇ did not recall Mr. Lopez "being concerned about his own [criminal] exposure" in connection with the government's FIFA investigation; ▇ did not have any reason to believe that Mr. Lopez and Mr. Martinez would not "make good decisions on good business"; and that Mr. Lopez and Mr. Martinez were acting in the best interests of their employer.

4

(Umhofer Decl. Ex. S at 2.) The government incorrectly concludes that ▮ statements are not *Brady* because they "merely reflect the favorable opinion of a former colleague and the fact that ▮ did not 'recall' Lopez being concerned about criminal exposure" and that such "personal opinion and lack of recollection or observation of 'concern' are clearly not admissible or material." (Opp. at 13.) That is wrong for two reasons.

*First*, the government is wrong to consider the statements' admissibility in the *Brady* analysis because the duty to disclose favorable, material information "does not depend on whether the information to be disclosed is admissible as evidence in its present form." *United States v. Rodriguez*, 496 F.3d 221, 226 n.4 (2d Cir. 2007).

*Second*, the government reaches the wrong conclusion about materiality. The statements, as the government points out (Opp. at 13) reflect a "lack of observation": ▮, who worked closely with Mr. Lopez at Fox, did not observe any concern from Mr. Lopez about criminal exposure "in connection with the government's FIFA investigation." (Umhofer Decl. Ex. S.) That is not a reaction anyone would suspect from someone who was intricately involved in a conspiracy, but rather the reaction of someone who did not commit any crime. Surely, the government would argue the inculpatory nature of any observation by ▮ that Mr. Lopez *did* seem concerned about criminal exposure. ▮ converse statement is exculpatory.

Similarly, Exhibit T is an email from ▮ (Torneos's ▮) expressing surprise ("I am surprised") at news that Mr. Lopez "ha[d] learned" that T&T made certain payments without corresponding invoices. The most logical reading of the email is that ▮ did not believe Mr. Lopez knew about the payments, yet the government somehow concludes that this statement shows that "Lopez had a detailed level of knowledge of undocumented payments." (Opp. at 14 n.5.) But this conclusion ignores the fact that ▮—a

5

person who, according to the government's evidence at the 2017 trial, furthered the bribery scheme—is "surprised that Hernan Lopez has learned about this," where the "this" is payments the government believes were part of the bribery scheme.

Even if evidence or information has both exculpatory and inculpatory characteristics, the law considers it *Brady*. *Rivas*, 377 F.3d at 199 (finding *Brady* violation despite acknowledging that witness's inconsistent statement with exculpatory qualities "was consistent with his trial testimony that the narcotics belonged to [defendant] Rivas"). The government suggests that it cannot determine what information is exculpatory because the defense has not disclosed its theory of the case. (Opp. at 14.) But disclosure of the defense theory is not necessary to know that an email from an alleged conspirator regarding payments from T&T—an entity allegedly used to pay bribes—is exculpatory where that executive expresses surprise that Mr. Lopez has learned about such payments and is concerned about his ongoing involvement auditing the bribe payer. "No competent prosecutor would be surprised, based on what he thinks defendant should know, to find defense counsel poking holes in the government's case." *United States v. Hernandez-Meza*, 720 F.3d 760, 765 (9th Cir. 2013); *see also United States v. Saffarinia*, 424 F. Supp. 3d 46, 88 (D.D.C. 2020) ("[T]he prosecution knows, as any litigator would know, what evidence, on its face, significantly detracts from the factual elements which must be proven in a particular case." (internal quotation marks omitted)).

6

### 2. The government agreed to identify *Brady* materials, but ordering the government to identify *Brady* materials is appropriate in this instance.

The government also asserts that, even if ▮▮▮▮▮▮▮ statements and Exhibit T are *Brady*, it is under no obligation to review its productions to determine whether any more *Brady* exists therein. But the government already agreed to do so. (Umhofer Decl. Ex. S).

If the government is reneging on its prior promise, it should be ordered to identify *Brady* in its productions. Courts have found that a duty to identify *Brady* information arises where the government had produced fewer than the eighteen million pages produced in this case, with more discovery reportedly still to be produced. *See, e.g.*, *Saffarinia*, 424 F. Supp. 3d at 84-91 (3.5 million pages of documents); *United States v. Cutting*, Case No. 14-cr-00139-SI-1, 2017 WL 132403, at *10 (N.D. Cal. Jan. 12, 2017) (3.3. million pages of documents); *United States v. Blankenship*, Criminal Action No. 5:14–cr–00244, 2015 WL 3687864, at *7 (S.D.W. Va. June 12, 2015) (four million pages); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) (rejecting claim that defendant should have been able to find the exculpatory information in the "haystack" of 600,000 documents).

The government asserts that it has satisfied its *Brady* obligations by producing materials with indices and in a searchable format. (Opp. at 16.) The government has not produced detailed indices; it has provided production logs not useful for determining whether any *Brady* material might exist within the productions. (*See, e.g.*, Umhofer Decl. Ex. E). In any event, the production logs and metadata that the government has provided do not categorically absolve it of its obligations to identify exculpatory evidence. *See Saffarinia*, 424 F. Supp. 3d at 84-91 (ordering the government to identify *Brady* materials where it provided a "hot documents binder" and produced documents "with production logs, Bates-stamping, and metadata in an electronic and searchable format that is accessible through 'Relativity,' an electronic database");

7

*Blankenship*, 2015 WL 3687864, at *7 (declining to relieve prosecutors of duty to identify *Brady* where they "provided a database capable of electronic search [that] is rich with metadata and indexed by a variety of different characteristics").

The government should be required to apply the correct *Brady* standard to its analysis and, in keeping with its communications with defense counsel, re-review its productions and direct the defense's attention to any materially favorable information.

### 3. The government is withholding documents material to the defense.

The Rule 16 analysis is straightforward: the government must either produce all the Fox and Torneos documents in its possession or explain why those documents do not meet the low standard for disclosure under Rule 16. "Evidence is material under Rule 16 if it 'could be used to counter the government's case or to bolster a defense.'" *United States v. Messina*, No. 11–CR–31 (KAM), 2011 WL 3471511, at *1 (E.D.N.Y. Aug. 8, 2011) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)); *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) ("Materiality is a low threshold; it is satisfied so long as the information would have helped to prepare a defense." (internal quotation marks omitted)).

The documents that the defense seeks are presumptively discoverable under Rule 16 because the government obtained them from Fox and Torneos, two entities at the center of its investigation in this case. The government sought relevant documents from Fox and Torneos, and Fox and Torneos produced documents relevant to the government's requests. Beyond this facial relevance, the government believes that Mr. Lopez and Mr. Martinez were intricately involved in the charged schemes (Opp. at 13-14) so even their conspicuous *absence* from documents produced by Fox and Torneos would, itself, be material evidence.

The government's contention that the defense is embarking on a fishing expedition by requesting scheduling communications with counsel for Torneos and Fox (Opp. at 20) fails for

8

two reasons.  First, that is the only category of information the government admits to withholding, not the only category it is withholding. (Umhofer Decl. Ex. X.) Second, the requested documents, including the scheduling emails, relate to the government's investigation into Mr. Lopez and Mr. Martinez, and the manner and frequency of communications between the government and cooperating witnesses is material to the preparation of their defenses.

The government's assertion that the defense cannot now complain the government is producing too much when it initially asked for open-file discovery distracts from the government's failures.  Had the government agreed to open-file discovery, the defense would have the materials it seeks.  Instead, the government has indefensibly prioritized the production of ▮▮▮▮ over relevant documents it received from Fox and Torneos and attempted to justify that decision as over-inclusion.

The government also appears to defend its withholding of Torneos documents by arguing that it does not possess documents Torneos produced in a parallel civil case that incorporates the entirety of the original indictment in the civil complaint.  The government's position is contrary to the law in this Circuit, which recognizes that documents possessed by those that have entered into a deferred prosecution agreement with the government, are within the government's possession, custody, or control.  *United States v. Stein*, 488 F. Supp. 2d 350, 358-59, 369-70 (S.D.N.Y. 2007); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000).

**C.     The Government Should Provide Responses To The Defense's Discovery Requests.**

The government has still refused to take the basic step of responding item-by-item to the defense's initial requests for discoverable materials.  As a practical matter, providing specific responses to the requests would not be overly burdensome, since there is an abundance of legal and support resources assembled by the government for this prosecution.  Such a response would help determine the issues to be brought to the Court's attention in a timely manner.  "When the

9

prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States v. Agurs*, 427 U.S. 97, 106 (1976).

## CONCLUSION

For the foregoing reasons, Mr. Lopez and Mr. Martinez respectfully request that the Court enter an Order requiring the government to:

1. Review all productions, including all witness statements, under a correct reading of *Brady* to determine whether there is any material contained therein that is favorable to the defense and, if so, immediately identify such information and/or produce it to the defense if it has not been produced thus far;

2. Produce all documents it obtained from Fox and Torneos, or explain why those documents are not discoverable pursuant to Rule 16 and *Brady*; and

3. Provide specific responses to the discovery requests that Mr. Lopez and Mr. Martinez set forth in their letters of April 21, 2020 and April 27, 2020.

Dated: October 24, 2020

Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP

/s/Matthew Donald Umhofer

Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs
*Attorneys for Hernan Lopez*

McCOOL LAW PLLC

/s/Steven J. McCool

Steven J. McCool
Julia M. Coleman

Ramon A. Abadin

Michael T. Cornacchia
*Attorneys for Carlos Martinez*

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| *April 21, 2020*<br><br>*Umhofer Decl. Ex. A* | [T]he government's Brady obligations require it to conduct a thorough review of all information in its possession and to identify for the defense all Brady material found during that review. *United States v. Cutting*, 2017 WL 132403, at *8-9 (N.D. Cal. Jan. 12, 2017).<br><br>We ask that you promptly notify us whether you will adopt an "open file" approach to discovery, whether the government will comply with the specific requests contained in this letter, and whether the government agrees to produce materials that fall within each specific request. In order to identify areas of agreement and dispute, we ask that you provide an itemized response reflecting the government's position as to each numbered paragraph below. An itemized response is important, as it will help us to work through the discovery issues together and efficiently narrow the areas of dispute.<br><br>[The defense requests] [a]ll exculpatory information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999). This includes, but is not limited to, all documents or information . . . . that, in whole or in part or considered with other evidence, indicate or tend to establish that: | *Apr. 30, 2020*<br><br>*Umhofer Decl. Ex. B.* | The government confirms that it is aware of, and will comply with, its discovery obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500. The government declines to further characterize its approach to discovery or to provide itemized responses to the dozens of specific requests listed in your letter, some of which reference materials that are not discoverable under any applicable rule or statute. |

1

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | a. Mr. Lopez did not commit any element of the charged offenses, including information or documents tending to show that Mr. Lopez neither knew of nor agreed to participate in the alleged fraudulent scheme that forms the basis for counts nine through twenty-one (inclusive) of the Superseding Indictment . . . . | | |
| *May 28, 2020*  *Umhofer Decl. Ex. F* | Please confirm whether [prior] productions contain all the documents that the government obtained from Fox, Torneos, or any of their subsidiaries or affiliates. If there are outstanding documents from these entities that the government has not produced, please let us know whether the government intends to produce them in a later production.

We reiterate our position that the voluminous discovery in this case requires the government to identify Brady materials in its productions. In document-intensive cases like this one, courts have determined that the government's Brady obligations require it to identify exculpatory materials buried in its large productions. *United States v. Cutting*, 2017 WL 132403, at *8-9 (N.D. Cal. Jan. 12, 2017); *United States v. Hsia*, 24 F. Supp. 2d 14, 28 (D.D.C. 1998). | *June 6, 2020*  *Umhofer Decl. Ex. H* | [W]e reiterate that we are aware of and will comply with the requirements of Rule 16 and Brady and its progeny. As you know, we are in the process of trying to get voluminous discovery out to you as efficiently as possible under difficult circumstances. We will continue to provide descriptions of the sets of documents we produce so you can understand what you are receiving. |
| *June 17, 2020*  *Umhofer Decl. Ex. I* | [W]e ask that you confirm whether the government's May 7, 2020, production contained all of the materials it has received from 21st Century Fox ("Fox") or whether the government still possesses documents it | *July 9, 2020*  *Umhofer Decl. Ex. K* | We continue to receive documents from various sources, including Fox, and thus are not in a position to say that we have produced all materials received from any particular source, nor do we think that such |

2

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | obtained from Fox that it has not produced. If the government has not yet produced all the documents it obtained from Fox, we ask that you confirm when it intends to do so.

We request that the government produce materials related to both the DPA and Torneos's cooperation with its investigation, including but not limited to: correspondence with Torneos related to the DPA or government investigation, drafts of the DPA exchanged with Torneos, and materials related to any information presented to the government by Torneos. *See United States v. Stein*, 488 F. Supp. 2d 350, 358-59, 369-70 (S.D.N.Y. 2007). | | information (whether we have produced all materials from a particular source) is generally discoverable. We do have additional materials from Fox that we intend to produce as soon as possible. We hope to get out another discovery letter this week, which will address an issue that caused some delays on our end.

We expect that we will have additional documents to produce from Torneos y Competencias. Relatedly, we continue to make assessments as to the discoverability of certain materials in our possession. We note that we are unaware of any authority holding that communications between the government and a cooperating entity are discoverable as a categorical matter. |
| *July 20, 2020*

*Umhofer Decl. Ex. M* | First, we note that materials possessed by, or exchanged with, cooperating entities are "categorically" discoverable if those materials are discoverable under Fed. R. Crim. P. 16. *See United States v. Stein*, 488 F. Supp. 2d 350, 358-59, 369-70 (S.D.N.Y. 2007). This goes for communications between the government and Torneos y Competencias, S.A., and/or its counsel, which we request you provide to us as soon as possible.

Second, we understand that the government continues to receive documents from third parties. However, please let us know whether there are materials from | *July 30, 2020*

*Umhofer Decl. Ex. O* | To the extent we have materials from cooperating entities that are discoverable under Rule 16 or otherwise, you will receive those materials.

Please let us know the authority you are relying on for your request that we inform you of materials in our possession that are not discoverable. |

3

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
|  | either 21st Century Fox or Torneos that are *currently* in the government's possession that the government believes are *not* discoverable. |  |  |
| *July 27, 2020*<br><br>*Umhofer Decl. Ex. N.* | [W]e make the following requests for information pursuant to *Brady v. Maryland*, 363 U.S. 83 (1963) and its progeny:<br><br>1. Please provide the names of anyone interviewed by the government (including any law enforcement agencies) or any cooperating entity, who either (a) stated that Mr. Lopez and/or Mr. Martinez were not involved in or did not know of the conspiracies/scheme discussed in ¶¶ 73-74 and ¶¶ 129-35 of the TSI or (b) state that they did not know whether Mr. Lopez's and/or Mr. Martinez were involved in the conspiracies/scheme.<br><br>3. Any of Mr. Lopez's actions known to the government that tend to show that Mr. Lopez did not knowingly and/or intentionally participate or agree to participate in the conspiracies/scheme alleged in ¶¶ 73-74 and ¶¶ 129-35 of the TSI. | *July 30, 2020*<br><br>*Umhofer Decl. Ex. O* | We are aware of and will comply with our obligations under Brady v. Maryland and its progeny. |
| *August 6, 2020*<br><br>*Umhofer Decl. Ex. P* | In response to our April 21, 2020 letter formally requesting discovery and pointing out the government's obligation to identify *Brady* materials in its productions, you stated that the government "is | *Aug. 28, 2020*<br><br>*Umhofer Decl. Ex. S* | We write in response to your letter dated August 6, 2020, in which you seek clarification concerning the government's approach to its obligations under Brady v. Maryland, 373 U.S. 83 (1963). We are not aware of |

4

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | aware of, and will comply with" its *Brady* obligations. Similarly, on May 28, 2020, we requested that the government "comply with its discovery obligations by identifying any *Brady* materials in its prior productions and in its productions going forward." You responded to that request by stating that you "are aware of and will comply with the requirements of Rule 16 and *Brady* and its progeny" and would "continue to provide descriptions of the sets of documents." However, you have yet to identify any *Brady* materials in the government's productions and it's unclear whether you plan to do so.<br><br>Please confirm whether there are any *Brady* materials in the government's prior productions and, if so, please let us know whether you intend to identify those materials. Additionally, please let us know whether you will identify *Brady* materials in any future productions.<br><br>Recently, we asked that the government provide the names of any individuals interviewed by the government who provided exculpatory information regarding Mr. Lopez. You informed us that you "are aware of and will comply with" your obligations under *Brady* and its progeny. We are still unclear about the government's understanding of its *Brady* obligations and would appreciate if you could shed some light on the government's position generally. | | any Brady materials in the discovery materials produced to date. To the extent we become aware of Brady materials either in our production sets or in statements made by witnesses, we will disclose and draw your attention to any such materials or statements. In an abundance of caution, we attach a letter providing information concerning statements by ▮▮▮▮, a former colleague of Hernan Lopez and Carlos Martinez at Fox, although these statements do not constitute Brady. |

5

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | In any event, we ask that you confirm whether any reports of interviews (ROIs) contain *Brady* information and, if so, we request early disclosure of those ROIs or, at minimum, of the exculpatory statements contained therein. | | |
| *August 7, 2020*<br><br>*Umhofer Decl. Ex. Q* | You have asked us to provide authority supporting our position that the government must provide us with information about which documents are not discoverable . . . . The most sensible approach to this issue is for the government to explain to us what it is withholding and its reasons for doing so.<br><br>Given the centrality of Fox and Torneos to the government's allegations, it is highly doubtful that documents the government obtained from those entities during an investigation directly related to Mr. Lopez's and Mr. Martinez's alleged conduct would not be material to the preparation of their defense and discoverable under Rule 16. Thus, the burden should be on the government to both disclose whether it is withholding any documents on the basis that they are not material and explain the rationale underlying its decision to withhold.<br><br>Our approach to this issue also makes sense given the requirements for demonstrating that documents are discoverable under Rule 16. The burden typically falls | N/A | [Defense counsel did not receive a response to this letter; to the extent the government responded, it did so in response to the defense's Sept. 1, 2020 letter]. |

6

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | on defendants to show that the documents they seek are material. *See United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004). But, as the Rule 16 Advisory Committee Notes acknowledge, if defendants do not know what evidence the government is withholding as immaterial, they cannot seek its disclosure. Fed. R. Crim. P. 16 ("It may be difficult for a defendant to make this showing [of materiality] if he does not know what the evidence is."). This case is no different, as it is practically impossible for us to show materiality without any information about the documents the government is withholding. | | |
| *Sept. 1, 2020*<br><br>*Umhofer Decl. Ex. U* | We write to follow up on our August 7, 2020 letter requesting clarification about whether the government is withholding any documents on the basis that they are not discoverable under Rule 16.<br><br>We note that we haven't received a response to our August 7, 2020 letter. We would appreciate a response to that letter because, in addition to the other reasons we stated, we have identified a number of "gaps" in the Bates numbers that Fox and Torneos assigned to documents, *i.e.*, the "21CF2" or "TORNEOS" Bates numbers that appear on documents in the government's second production are not contiguous. It is our understanding that these gaps confirm that Fox | *Sept. 4, 2020*<br><br>*Umhofer Decl. Ex. V* | We write in response to your follow-up letter dated Sept. 1, 2020. We do not intend to withhold Fox or Torneos documents that were produced previously – indeed, we are producing more documents than produced before the first trial because we have received additional documents since the trial. . . . We are still working through batches of previously produced documents and will continue to send productions on a rolling basis. We also continue to evaluate documents not previously produced to assess discoverability under Rule 16 or otherwise. |

7

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | and Torneos produced documents to the government that the government has not produced to us. | | |
| *Sept. 7, 2020* *Umhofer Decl. Ex. W* | Thank you for your September 4, 2020 email responding to our August 7, 2020 letter. We write to ask you to clarify your latest statements and reconcile them with those set forth in your prior communications.<br><br>In your September 4, 2020, email you wrote: "We do not intend to withhold Fox or Torneos documents that were produced previously – indeed, we are producing more documents than produced before the first trial because we have received additional documents since the trial." Later on, however, you wrote: "We also continue to evaluate documents not previously produced to assess discoverability under Rule 16 or otherwise."<br><br>On July 9, 2020, you stated: "[W]e continue to make assessments as to the discoverability of certain materials in our possession." On July 20, 2020, we asked: "[P]lease let us know whether there are materials from either 21st Century Fox or Torneos that are currently in the government's possession that the government believes are not discoverable." On July 30, 2020, you stated: "To the extent we have materials from cooperating entities that are discoverable under | *Sept. 8, 2020* *Umhofer Decl. Ex. X* | We write in response to your letter dated September 7, 2020. We have begun to look into the Bates gaps you have identified in the Fox and Torneos productions – thank you for your fast response on that issue. On that point, please let us know if you have a document bearing bates numbers FIFA2-000975789 - FIFA2-000975802 and, if so, provide us with the corresponding Torneos bates number, if any. As to your numbered questions, we have materials from Fox, Torneos, and others that were obtained by the government before and after the indictment was returned. These materials include documents that plainly are not discoverable – such as emails between counsel to schedule telephone calls, to give one example. We are still working to produce materials that were produced to the previous trial defendants, including additional bank records and MLAT returns, as well as materials obtained after the 2017 trial. As you know, we have produced and are producing many materials that are not discoverable under Rule 16 or otherwise. However, we are under no obligation to do so and will not do so when there are countervailing interest as, for example, when disclosure would risk compromising the safety of a witness or jeopardizing aspects of our ongoing investigation. Nevertheless, we will continue to assess all materials in our possession |

8

**EXHIBIT A TO REPLY IN SUPPORT OF MOTION TO COMPEL**

| Date of Def. Letter & Decl. Exhibit | Portions of Letters Related to Motion | Date of Gov't Response & Decl. Exhibit | Government Response |
|---|---|---|---|
| | Rule 16 or otherwise, you will receive those materials."<br><br>Please respond to the following questions, each of which calls for a "yes" or "no" answer. The term "you" refers to any government agent associated with the above-captioned prosecution.<br><br>[The defense then posed thirteen direct questions to the government aimed at obtaining answers about whether it was withholding documents it received from Fox and Torneos both before and after the issuance of the Third Superseding Indictment]. | | for discoverability, including in light of any discovery or information provided by the defendants pursuant to Rule 16(b), and will comply with our continuing duty to disclose all discoverable material. |

9