

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SPN/MKM/KDE/PTH/KTF

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 15, 2021

<u>By ECF</u>

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Full Play Group, SA, <u>et al.</u>
       Criminal Docket No. 15-252 (S-3) (PKC)

Dear Judge Chen:

  The government respectfully submits this letter in further opposition to defendants Hernan Lopez and Carlos Martinez's motion to compel the production of, among other things, materials obtained by the government from 21st Century Fox ("Fox") and Torneos y Competencias, SA ("Torneos") and in accordance with the Court's order dated November 20, 2020 directing the government to summarize the categories of documents it is withholding and explain why those documents are not discoverable under Federal Rule of Criminal Procedure 16(a), <u>Brady</u>, or otherwise.  ECF Dkt. No. 1441 (Motion to Compel); ECF Dkt. Entry dated Nov. 20, 2020 (Order).

I.  Discovery Context

  The government emphasizes at the outset that, as noted in its response in opposition to the defendant's motion to compel, ECF Dkt. No. 1444, and at the oral argument held on November 20, 2020, it intends to produce all historical documents obtained from Fox and Torneos during the course of its investigation – that is, all documents (contracts, emails, spreadsheets, invoices, audit reports, etc.) generated during the period of the charged offense conduct and subsequently produced to the government by Fox and Torneos.  The government also intends to produce, to the extent they are in its possession and have not already been produced, Fox and Torneos business contracts and other business documents from the period after the investigation became public in May 2015 that do not concern Fox and Torneos's cooperation.  For example, the government has already produced Fox and Torneos business contracts post-dating the unsealing of the first indictment in this case that relate to the Copa Libertadores rights that are the subject of the pending charges.

The remaining Fox and Torneos materials that are at issue in the defendants' motion are those obtained by the government during the course of and as a result of the entities' engagement with the government during its investigation. The Court directed categorization of only those materials the government intends to withhold, but, to provide the Court with relevant context, the government also describes herein categories of documents the government intends to produce as well as categories that the government has been assessing on a document-by-document basis irrespective of the defendants' motions.[1]

The government notes that it generally does not review or categorize its holdings in this manner; it is not required to do so under the rules and law governing discovery and disclosures, and the process is burdensome, particularly in the face of overbroad discovery demands. See Fed. R. Crim. P. 16(a)(1)(E). Indeed, the government understands the defendants to seek (compelled) production of all materials obtained from Fox and Torneos, no matter their content or relevance to the case at hand. For example, the defendants seek emails between government attorneys for Fox and Torneos on matters as banal and irrelevant as the scheduling of telephone calls notwithstanding that, as discussed further below, such correspondence falls well outside the scope of Rule 16. ECF Dkt. No. 1441-3, Coleman Declaration Ex. A; ECF Dkt. No. 1451-3, Umhofer Revised Decl. Ex. A.; see United States v. Larranga Lopez, No. 05-CR-655 (SLT), 2006 WL 1307963, at *8 (E.D.N.Y. May 11, 2006) (Rule 16 "does not entitle a criminal defendant to a 'broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up.'") (quoting Jencks v. United States, 353 U.S. 657, 667 (1957)). The government reiterates that it is well aware of, understands, and fully intends to comply with its discovery and disclosure obligations under Rule 16, Brady, Giglio, and the Jencks Act and respectfully submits that it is not for the defendants to set the process by which the government complies with those obligations or, as requested by the defendants here, to obtain everything in the government's possession for the purpose of conducting the review themselves. See, e.g., United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *3 (E.D.N.Y. Dec. 16, 2016) (accepting the government's representation that it was aware of and would continue to comply with its Brady obligations, and denying motion to compel); United States v. Pugh, No. 15-CR-116 (NGG), 2015 WL 9450598, at *30 (E.D.N.Y. Dec. 21, 2015) (same).

---

[1] The government has made its best efforts to define categories that cover the universe of materials at issue, but it is possible that certain documents do not fall neatly into any particular category or fall into more than one. Again, the government does not make its discovery determinations on a categorical basis and this process of categorization has not affected, and will not affect, the government's compliance with its obligations.

II.        <u>Categories and Discovery Determinations</u>

    A.    <u>Materials the Government Intends to Withhold as Not Discoverable</u>

The government does not intend to produce the following categories of materials because they are irrelevant to the charges against the defendants and, in any event, are not discoverable under Rule 16 because the government does not intend to use them at trial, they were not obtained from the defendants, and they are not material to preparing a defense. See Fed. R. Crim. P. 16(a)(1)(E)(i)-(iii).

    1.    <u>Scheduling Emails, Cover Emails Relating to Discovery Productions, and Non-Substantive Correspondence</u>

The government does not intend to produce emails between the government and counsel for Fox or Torneos – or any other individual or entity involved in the case – that involve issues such as the scheduling of telephone calls, coordination of meeting dates, passwords or mailing information relating to production sets, inquiries about the timing for delivery of requested information, or other non-substantive content. See United States v. Messina, No. 11-CR-31 (KAM), 2011 WL 3471511, at *1 (E.D.N.Y. Aug. 8, 2011) (explaining that to be material to the defense, the requested information must "enable[ ] the defendant significantly to alter the quantum of proof in his favor"); see also United States v. Cardoso, No. 05CR. 563(LTS), 2006 WL 739836, at *1 (S.D.N.Y. Mar. 23, 2006) (holding that evidence is "material" under Rule 16(a)(1)(E)(i) if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor").

The defendants have argued that scheduling emails are material because "the fact and timing of those emails will contextualize meetings with cooperating entities, permitting the defense to draw specific inferences about the government's investigation" and "will provide information that will guide defense investigations and trial preparation, and the defense must be permitted to review that correspondence to determine how to best put it to use." (Mot. at 14). The government cannot imagine what inferences or relevant contextualization the defendants have in mind or how the scheduling emails could guide the defense investigation or trial preparation. Indeed, there can be no appropriate use for such materials by the defendants in light of the fact that the conduct, scope and timing of the government's investigation are not relevant to – or admissible in – the trial of the charged defendants. See United States v. Stewart, 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude the defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant); United States v. Sanchez, No. 92-CR-153, 1993 WL 462846, at *4 (N.D. Ill. Nov. 8, 1993), aff'd sub nom. United States v. Neville, 82 F.3d 750 (7th Cir. 1996) (holding defense counsel's "arguments and statements regarding the length of the government's investigation" and "the government's delay in bringing its indictment" were "improper"); see also United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (affirming jury charge stating that "[t]he government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand other things they could have done is wholly irrelevant" (internal quotations and alterations omitted)); United States v. Preldakaj, 456 F. App'x 56, 60 (2d Cir. 2012) (affirming

3

instruction that "[y]ou have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by law enforcement authorities[, but t]he government is not on trial, and law enforcement techniques are not your concern").[2]

To the extent correspondence from counsel for Fox or Torneos includes substantive, material, non-public information not otherwise available in the underlying documents produced by the government, the government will provide such information to the defendants.

        2.        <u>Draft Deferred Prosecution Agreements and Correspondence Relating to Resolution of Torneos' Criminal Exposure</u>

The government does not intend to produce drafts of the Deferred Prosecution Agreement ("DPA") entered into between the government and Torneos because such drafts fall outside the scope of Rule 16. In particular, they are immaterial to the defense. The government recognizes that, in theory, a draft DPA or related correspondence could contain discoverable material, but no such material exists in the drafts prepared or correspondence exchanged in this case. The final DPA is a public document, see <u>United States v. Torneos y Competencias, S.A.</u>, 16-CR-634 (E.D.N.Y.), ECF Dkt. No. 4, and the drafts and correspondence that gave rise to the final agreement with Torneos have been reviewed by the government and do not include admissions, arguments, or other information material to the case before the Court.

The defendants argued in a recent letter to the government that materials and correspondence related to the DPA are "likely to shed light on the ways in which Torneos carried out the Copa Libertadores Scheme #2 and may establish that it did so in a manner supporting the argument that neither Mr. Lopez nor Mr. Martinez were involved in the scheme." The government has reviewed the materials at issue and they do not illuminate matters in the way imagined and hoped for by the defendants. Rather, they primarily reflect negotiation over the terms of the resolution (such as the amount of the fine and forfeiture) and do not include denials by Torneos or disagreements over the underlying facts.

The defendants cite to <u>United States v. Stein</u>, 488 F. Supp. 2d 350 (S.D.N.Y. 2007),[3] but the case is inapposite. At issue in <u>Stein</u> was a company that claimed its innocence

---

    [2] Although not within the scope of the Order, the government notes that it also does not intend to produce copies of subpoenas issued during the course of its investigation, although the defendants have requested "[c]opies of all subpoenas issued during the course of the government's investigation." Umhofer Decl. Ex. A at C.6; <u>see</u> Coleman Decl. Ex. A at 4. These materials are not discoverable for a number of reasons, including grand jury secrecy, <u>see</u> Fed. R. Crim. P. 6(e)(6), and the principle that the government's investigation is not on trial. <u>See</u>, e.g., <u>United States v. Webb, et al.</u>, 15-CR-252 (PKC), Transcript dated Dec. 11, 2017 at 3631 ("[E]vidence or argument that [is] really solely about what the government didn't do or how it conducted its investigation is inappropriate.").

    [3] In the government's view, <u>Stein</u> was wrongly decided in certain respects, particularly in its resolution of the disputed discovery issues.

and drafted a white paper documenting arguments purportedly supporting its view of the case. Id. at 358-60. Individuals, including former partners of the company, who were then charged in the criminal case sought access to the company's white paper, among other documents and communications. Id. at 354-57. Here, nothing like that occurred, and no such white paper was given to the government. To the contrary, following the unsealing of the indictment, Torneos promptly accepted responsibility for its criminal wrongdoing. See United States v. Torneos, 16-CR-634 (PKC), Transcript dated Dec. 14, 2020 at 4.

Similarly, the government does not intend to produce PowerPoint decks presented during the course of presentations delivered by Fox and Torneos because those decks either reference underlying materials already produced to the defendants or relate to the companies' analysis of the "Filip Factors." To the extent such presentations include substantive, material, non-public information not otherwise available in the underlying documents produced by the government, the government will disclose, as appropriate, such information in letter form.

### 3. Torneos Annual Compliance Reports

The defendants have requested annual compliance reports submitted to the government under the terms of the DPA. These reports document Torneos's efforts to implement and maintain a more robust compliance program. In the government's view, these reports are not discoverable. To the extent they contain material, non-public information that arguably falls within the scope of Rule 16, the government will provide such information in letter form.

### 4. Documents Regarding Forfeiture of Datisa-Related Funds

Among the obligations undertaken by Torneos under the terms of the DPA was to make an effort to obtain payment from various downstream contracting parties who owed money to Datisa, a partnership among Full Play, Traffic, and Torneos – funds that are forfeitable in connection with the government's case. In complying with its collection obligations, Torneos and its counsel issued various letters and other correspondence seeking to collect outstanding payments. None of those letters or related documents or correspondence contain information discoverable under Rule 16, as they simply provide the fact of certain intended transfers, payment instructions, and related information.

### 5. Correspondence and Filings Relating to the Civil Case Filed in the Southern District of Florida

The government is in receipt of various emails, letters and related documents, including court filings, obtained in connection with civil litigation currently pending but stayed in federal court in the Southern District of Florida. See GolTV, Inc. v. Fox Sports Latin America, Ltd., 16-CV-24431 (S.D.F.L.). It is the government's understanding that all three defendants currently before Court are parties to that litigation and thus are in possession of these materials. The government received some correspondence from parties to that litigation, including Fox and Torneos, directly in connection with the government's motion to stay the case and related discovery matters. None of that correspondence contains discoverable information.

### B. Materials to be Produced

Although arguably not discoverable under Rule 16 or otherwise, the government does intend to produce certain additional materials obtained from Fox and Torneos, in some instances pending further review for the appropriate scope of production. The government intends to produce privilege logs generated by Fox, for example, in which Fox lists documents it has declined to produce to the government on the basis that they are protected by attorney-client privilege.

In addition, as the Court is aware, and as is a matter of public record, Datisa entered into a stipulated settlement with the government in connection with the government's efforts to forfeit certain funds maintained by Datisa and its partners in an account in Switzerland. See ECF Dkt. Nos. 1309-1317, 1320-1324. The Court's forfeiture order was publicly filed by the Court (ECF Dkt. No. 1324), and the government intends to produce the settlement agreement between the parties as well as certain other corporate Datisa documents and records obtained by the government in this process. Correspondence related to the negotiation of the settlement are not relevant to or discoverable in the current case.

### III. Conclusion

For the reasons set forth herein and in its opposition to the defendants' motion to compel, the government respectfully requests that the Court deny the defendants' motion to the extent it urges Court intervention or compelled production of documents the government intends to withhold as not within the scope of its disclosure obligations under Rule 16, Brady, Giglio, or the Jencks Act.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:     /s/
Samuel P. Nitze
M. Kristin Mace
Keith D. Edelman
Patrick T. Hein
Kaitlin T. Farrell
Assistant U.S. Attorneys
(718) 254-7000

cc:     Counsel of record (by ECF)
        Clerk of Court (PKC) (by ECF)