

U.S. Department of Justice

United States Attorney
Eastern District of New York

SPN:KTF

271 Cadman Plaza East
Brooklyn, New York 11201

May 21, 2021

**TO BE FILED UNDER SEAL**

By Electronic Mail and ECF

The Honorable Pamela K. Chen
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Hernan Lopez
                Criminal Docket No. 15-252 (S-3) (PKC)

Dear Judge Chen:

      The government respectfully submits this letter to notify the Court of potential conflicts involving attorneys from Debevoise & Plimpton LLP ("Debevoise"), including John Gleeson, Esq. and David Sarratt, Esq. and their associates, who represent the defendant Hernan Lopez. The potential conflict arises from the fact that Debevoise also (1) currently represents ███████████████████████████████ that is relevant to the charges currently before the Court; (2) has previously represented ███████████████████████████████████████████████████████████████████████ that is relevant to the charges currently before the Court; and (3) has represented or currently represents ████████████████████████████████████████████████████████████████████████████████████.[1]

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so that the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v.

---

[1] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The government does not anticipate that Debevoise's representation of these individuals will present a conflict at trial since their conduct is not alleged to have overlapped with that of Lopez. Nevertheless, these individuals may be discussed in trial testimony in connection with the government's presentation of evidence against Lopez's co-defendant Full Play Group, S.A. ("Full Play").

Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

## BACKGROUND

The charges against the defendant arise from his and his co-conspirators' involvement in a years-long scheme to pay bribes to soccer officials to secure lucrative commercial rights to certain soccer tournaments and events. Lopez, along with Carlos Martinez, Full Play, Gerard Romy, and other co-defendants, were charged in a third superseding indictment (the "Indictment") returned on March 18, 2020 with various wire fraud and money laundering offenses in connection with the scheme. ECF Dkt. No. 1337. Full Play and Romy, who is not currently before the Court, also were charged with racketeering conspiracy and additional wire fraud and money laundering counts arising from their involvement in related schemes to bribe soccer officials.

I. **Facts** ▮

As proven at the 2017 FIFA trial, in or about 1997, Argentine sports marketing company Torneos y Competencias ("Torneos") and the Brazilian sports marketing company Traffic formed a joint venture called T&T Sports Marketing Ltd. ("T&T"). Starting in or about February 2002, American media conglomerate 21st Century Fox ("Fox") acquired and maintained an ownership stake in T&T through, variously, Fox affiliates and/or subsidiaries. Lopez was President and Chief Executive Officer of Fox International Channels ("FIC"), a Fox subsidiary involved in Fox's stake in T&T, from January 2011 to January 2016, and held a number of other executive roles at FIC and related entities since 2000.

Starting in or about 2000, various South American soccer officials, including the presidents of national soccer federations and officials of the Confederación Sudamericana de Fútbol ("CONMEBOL"), solicited annual bribe payments from, among others, one of the co-founders of Torneos in exchange for the soccer officials' support of T&T as the holder of the broadcasting rights to the Copa Libertadores and other events. T&T agreed to pay and did pay millions of dollars of annual bribes to soccer officials for approximately the next fifteen years.

One method by which T&T paid bribes to soccer officials was through an off-books, shell entity located in the Netherlands called Torneos &Traffic Sports Marketing B.V. ("T&T Holland"). From 2004 to 2015, T&T sold or assigned to T&T Holland lucrative free-to-air rights to broadcast certain matches of the Copa Libertadores tournament in Brazil for amounts well below market value. T&T Holland, in turn, sold the rights to Globo for far higher – but still below market value – amounts, generating off-books profits that were used to pay the bribes promised to CONMEBOL officials. The evidence at trial will establish that Lopez, among other co-conspirators, agreed to, and helped to implement, this method of paying bribes to ensure that T&T retained the Copa Libertadores broadcasting rights.

II. ▮



III.   Conflict Disclosures to Debevoise's Clients

Debevoise has informed the government that the firm has informed Lopez of the potential conflict posed by having the firm that represents him also represent other individuals and entities whose conduct may be referenced at trial and whose current and/or former employees may be called to testify as witnesses at trial. The government has been informed that Lopez understands that he will not be permitted to take any position at trial that is adverse to the interests of Debevoise's other clients, and that, to the extent any witness ▓▓▓▓▓▓▓▓▓▓ is called to testify, independent counsel will be available to cross examine any such witness.[2] Debevoise also has informed the government that it has informed ▓▓▓▓▓▓▓▓▓▓ of the potential conflicts described herein, and that ▓▓▓▓▓▓▓▓▓▓ Lopez each has waived any potential conflict. In addition, the government has been informed that the firm has established a wall to prevent the flow of any privileged or confidential information between Lopez's defense team and the teams representing the firm's other FIFA-related clients.

## DISCUSSION

I.   Applicable Law

A.   Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

---

[2] Debevoise has informed the government that Michael Considine of Seward & Kissel LLP, one of Lopez's attorneys of record, has agreed to serve as Curcio counsel. Independent counsel will also be available to cross-examine any witnesses at trial as to whom Debevoise has a conflict.

To determine if a defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to" another current or former client. Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). If, by contrast, a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing the appropriate Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998). Importantly, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. See Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996).

B.   Relevant Potential Conflicts

In evaluating an actual or potential conflict of interest, actions and conflicts of any member of a law firm are imputed to every member of the firm. E.g., United States v. Jiang, 140 F.3d 124, 127 (2d Cir. 1998).

An attorney's or law firm's representation of a co-conspirator or government witness presents an inherent conflict of interest. In particular, in representing a client, a lawyer may not use privileged information obtained from another client. See United States v. James, 708 F.2d 40, 45-46 (2d Cir. 1983); United States v. Cunningham, 672 F.2d 1064, 1072-73 (2d Cir. 1982). Moreover, in representing a client, a lawyer may not attack another client through

4

cross-examination or argument to the jury or the court. See United States v. Pizzonia, 415 F. Supp. 2d 168, 177-78 (E.D.N.Y. 2006).

A serious conflict may arise if one of the firm's clients cooperates or wishes to cooperate with the government's investigation and testifies as to facts inculpating the other client. See Locascio, 6 F.3d at 931; Iorizzo, 786 F.2d at 57; Restatement (Third) of the Law Governing Lawyers § 121 (2000) (recognizing that a serious problem arises when "there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by . . . the lawyer's duties to . . . a former client . . . ."). This is because a lawyer or law firm owes an absolute duty of loyalty and confidentiality to all clients, including former clients. See United States v. Yannotti, 358 F. Supp. 2d 289, 295 (S.D.N.Y. 2004); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994); ABA Model Code of Professional Responsibility, Ethical Consideration 4-6. That duty, which remains in force even after representation ends, precludes the lawyer from disclosing matters revealed to him by reason of the confidential relationship, absent release from that duty under the law. See Rahman, 861 F. Supp. at 274; EC 4-6 ("The obligation to protect confidences and secrets of a client continues after the termination of employment."). Therefore "unless the . . . client waives these obligations, the attorney's . . . representation creates the potential for a serious conflict of interest." Yannotti, 358 F. Supp. 2d at 295.

C.  Waiver

Notwithstanding the limitations outlined above, a defendant generally can waive potential conflicts arising from an attorney's or law firm's representation of a witness or co-conspirator. See Perez, 325 F.3d at 124 (citing United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993)); United States v. Oberoi, 331 F.3d 44, 50 (2d Cir. 2003). Such a waiver is allowed because:

> Although such a conflict might require a defendant to abandon a particular defense or line of questioning, he can be advised as to what he must forgo; he "can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel."

Perez, 325 F.3d at 124 (quoting Fulton, 5 F.3d at 613).

II.  Proposed Curcio Inquiry

A potential conflict exists because, in addition to Lopez, Debevoise represents ███████████████████████████████████████████████

As described above, the government will present evidence at trial about ███ to prove the charges against Lopez. The government believes it is likely that Debevoise's clients, ███████████ each are in possession of information that is adverse to one another. Because Debevoise also represents ███, Lopez will not be able to take positions at trial that are adverse to ███ and separate counsel may be needed to cross-examine any ███ witness. To the

5

extent Lopez is convicted, these restraints would also apply to Lopez's attorneys' advocacy at sentencing.

The restraints described above also will apply as to ▮▮▮▮ represented by Debevoise, although these issues are less acute because, unlike with ▮▮▮▮, Lopez's conduct does not clearly overlap with the conduct of the other Debevoise clients.

Accordingly, the government respectfully submits that the Court should conduct a <u>Curcio</u> hearing at which the Court advises Lopez as to the potential conflicts and permits Lopez to waive such potential conflicts, if he chooses to do so, with conflict-free <u>Curcio</u> counsel available for consultation. At the hearing, the government respectfully proposes that the Court advise Lopez as follows:

> Some of your attorneys are employed by Debevoise & Plimpton LLP, a law firm that currently represents ▮▮▮▮ ▮▮▮▮ Specifically, to prove the allegations against you, the government intends to present evidence that, among other things, from 2004 to 2015, T&T Sports Marketing Ltd. assigned or sold the free-to-air broadcast rights for the Brazilian territory for certain club tournament matches to an off-books entity at below market rates, and that the off-books entity, Torneos & Traffic Sports Marketing B.V., in turn sold the rights to Globo for substantially more money, generating off-books profits that were used to pay the bribes promised to certain CONMEBOL officials. In addition, the record of the FIFA trial held in 2017 includes references to ▮▮▮▮ ▮▮▮▮
>
> Debevoise has certain ethical obligations to ▮▮▮▮. For example, your Debevoise attorneys may not introduce evidence or make arguments on your behalf that might tend to incriminate ▮▮▮▮ or be contrary to ▮▮▮▮ interests.
>
> Debevoise also may have privileged or confidential information from ▮▮▮▮ that could assist in your defense but that they could not disclose or use on your behalf. It also is possible that, where different attorneys would be free to take a certain position with respect to your relationship with ▮▮▮▮ or your relative culpability in the crimes charged against you, your attorneys from Debevoise will be constrained in making such arguments to the extent they relate to ▮▮▮▮.
>
> Debevoise also formerly represented ▮▮▮▮ ▮▮▮▮ Although the government has indicated that it does

not anticipate presenting evidence about ▌ ▌ in support of the specific charges against you, the government may present evidence about ▌ ▌ at trial in support of its case against your co-defendant Full Play, or against Gerard Romy, in the event that he is extradited prior to trial.

As with ▌, Debevoise has certain ethical obligations to these other clients. Your Debevoise attorneys may not introduce evidence or make arguments on your behalf that might tend to incriminate or be contrary to the interests of ▌ ▌ ▌.

There may be other issues, in addition to the ones that I have just described, that could arise in which your attorney's ability to do certain things might be affected by Debevoise's representation of another client in matters related to this case. No one can foresee every possible conflict of interest or the practical effects of such conflicts.

You have the right to be represented by an attorney or attorneys who do not have any potential conflicts of interest in representing you at all stages of this case. If you proceed with your attorneys from Debevoise, you will be giving up that right. Do you understand that?

Have you discussed these issues with your attorneys?

You also have the right to consult with an independent, conflict-free attorney who can advise you about the possible conflicts of interest that might arise if you proceed with your Debevoise attorneys. Do you understand that? Have you done so?

Do you have any questions about what I have just explained to you? Can you tell me in your own words what you understand the potential conflicts of interest to be?

You are not under any pressure to make a decision about this right now. You are entitled, if you wish, to a reasonable period of time to think about these matters, or to consult further with your lawyers or with another lawyer before you inform the Court what you wish to do.

If you do not need additional time, please tell me whether you wish to waive the potential conflicts of interest and continue with the representation by Debevoise & Plimpton LLP, or alternatively, if

you wish to seek new counsel with no potential conflicts of interest.

## SEALING

The government understands from discussions with Lopez's counsel David Sarratt that Debevoise's representations of ███████ are non-public. Accordingly, counsel for Lopez have requested that the government file this letter under seal with a redacted version filed publicly. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal. See, e.g., United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); Lugosch v. Pyramid Co., 435 F.3d 110, 119-20 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, the privacy interests of uncharged third parties provide a clear basis for sealing. See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995) (privacy interests of third parties should weigh heavily in a court's sealing determination). Thus, the government respectfully requests to file this letter under seal with a redacted version filed publicly.

## CONCLUSION

For the foregoing reasons, the Court should notify the defendant of the potential conflicts discussed above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise the defendant regarding his right to conflict-free representation and determine if he waives that right.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By: _____/s/_____
Samuel P. Nitze
M. Kristin Mace
Patrick Hein
Keith D. Edelman
Kaitlin Farrell
Victor Zapana
Assistant U.S. Attorneys
(718) 254-7000

cc: David Sarratt, Esq. and John Gleeson, Esq. (counsel to Hernan Lopez)