**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) Case No. 15-cr-252 (PKC) <br> CARLOS MARTINEZ, and ) <br> HERNAN LOPEZ ) <br> ) <br> *Defendants*. ) <br> ) | |

**REPLY IN SUPPORT OF DEFENDANTS CARLOS MARTINEZ AND**
**HERNAN LOPEZ'S MOTION FOR A BILL OF PARTICULARS**

Carlos Martinez and Hernan Lopez (collectively "Defendants"), by and through their undersigned counsel, respectfully submit the following Reply in support of their motion for a bill of particulars.

Despite the government's conclusory characterization that there is an "extraordinary" level of detail available in this case, the government is unable to point to any document, prior testimony, or allegation concerning Mr. Martinez and Mr. Lopez that provides adequate notice of the conspiratorial conduct charged against them. As detailed in Mr. Martinez and Mr. Lopez's Motion for Bill of Particulars (ECF No. 1554), the government has not identified any source that establishes *when* Defendants allegedly joined a conspiracy that spanned fifteen years, and began more than a decade prior to Fox's ownership of the television broadcast rights at issue, or *how* Defendants allegedly participated in a fully developed, complex conspiracy that was already fifteen years into its duration when the wires, which form the basis for the only substantive charges against Mr. Lopez and Mr. Martinez, were transmitted.

A defendant is entitled to be free from unfair surprise at trial, and from being forced to speculate as to what it is alleged that he did to commit the offenses charged. *United States v. Stern*,

1

No. 03 CR. 81 (MBM), 2003 WL 22743897, at *4 (S.D.N.Y. Nov. 20, 2003). Thus, courts will require a bill of particulars if doing so is necessary to prevent a defendant from being placed in the predicament where, as here, the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004).[1] The government makes much of the length and detail in the Third Superseding Indictment ("TSI"), but none of the detail pertains to Mr. Lopez and Mr. Martinez, and the length generated by their alleged activities is all of four short paragraphs. Nor is the 2017 trial record what the government purports it to be in terms of notice to Mr. Martinez and Mr. Lopez.

The basic information Defendants seek—when the government alleges they joined the conspiracy, and what they are alleged to have done to participate in it—is critical to Defendants' trial preparation. During the fifteen-year period the conspiracy is alleged to have occurred, multiple companies had varying roles in initiating, shaping, and executing the contracts that form the basis of the government's charges. For instance, Mr. Lopez and Mr. Martinez's employer,

---

[1] Although the government relies on the general proposition that it need not provide the "wheres, when[s], and with whoms" of a conspiracy, *United States v. Perryman*, 881 F. Supp. 2d 427, 430 (E.D.N.Y. 2012), there is more specific authority that a defendant *is* entitled to know when it is alleged that he first joined the conspiracy. *See United States v. Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985) (granting request for a bill of particulars, requiring the government to state "the approximate date, time and location where it is claimed that [defendant] conspired to violate federal narcotics laws"; *accord United States v. Ranieri*, Case No. 17-cr-00533-EMC (LB), 2019 WL 3842092, at *2 (N.D. Cal. Aug. 15, 2019) (requiring the government to provide defendant a bill of particulars clarifying "when [he] joined the alleged conspiratorial agreement"; *United States v. Etienne*, No. CR 17-00093 WHA, 2018 WL 1456658, at *4 (N.D. Cal. Mar. 23, 2018) (requiring government to provide defendant a bill of particulars: "[C]larifying the earliest known date at which each defendant was participating in the RICO conspiracy, without prejudice to the government later proving an even earlier date"; and "[T]o the extent known to the government, disclosure of the following information: (1) a one-sentence description of the event or activities constituting the charged conduct; (2) the persons who participated in the conduct; and (3) the approximate date and location of the conduct."); *United States v. Alvarez*, No. 14–cr–00120 EMC (NC), 2014 WL 7240670, at *2 (N.D. Cal. Dec. 19, 2014) (ordering government "to provide a bill of particulars clarifying *when* each defendant is alleged to have first joined the conspiracy").

2

Fox, held a passive, minority interest in T&T Sports Marketing Ltd. ("T&T") for the first twelve years of the charged conspiracy, during which time Alejandro Burzaco's company, Torneos y Competencias ("Torneos"), and two other companies, controlled T&T. Similarly, the contracts at issue were negotiated and executed long before Mr. Lopez and Mr. Martinez were involved with T&T.

Accordingly, there is an exceedingly vast range of possible entry points where the government may assert Mr. Lopez and Mr. Martinez began to take part in the charged conspiracy, as well as roles that they may have played within that conspiracy. The problem is that neither the TSI, the 2017 trial record, nor the millions of pages of discovery provide the defendants with any notice of when the government alleges they joined the conspiracy or what it is they are alleged to have done to participate in it. Rather, Defendants are left subject to unfair surprise at trial.

Mr. Martinez and Mr. Lopez are not asking for a play-by-play of the government's trial presentation. They are asking for a general understanding of how and when they are alleged to have come to know of, joined and participated in a bribery scheme that was allegedly fully formed and operational for more than a decade before their employer owned the broadcasting rights that the government alleges were the focus of the bribes. Accordingly, Defendants respectfully request the Court order the government to provide them with this basic information.

## I. BACKGROUND

The charged conspiracy is alleged to have occurred over a fifteen-year period, from 2000 to 2015. As the Court is aware, the allegations in the TSI concern contracts for the broadcasting rights for the yearly editions of the Copa Libertadores tournament, which were awarded to T&T. However, what is likely new information to the Court, not apparent from the first trial, is that Fox, Mr. Lopez and Mr. Martinez's employer, held a passive, minority interest in T&T, until December

2011, nearly twelve years into the scheme that is charged against them. Between 2002 and 2012, T&T's ownership was split between Torneos, a company controlled by Alejandro Burzaco, and Fox Pan American Sports ("FPAS"), a company not controlled by Fox, even though it bore Fox's name. In or around 2007, seven years into the alleged conspiracy, DirecTV[2] purchased a 33.2% stake in Torneos. And in December 2011, Fox purchased FPAS, and with it, of course, its assets and liabilities, including FPAS' joint-venture share in T&T. Notably, Torneos continued to be the managing partner of T&T even following that transaction.

At that point (December 2011), Fox owned T&T with Torneos, and its (then) 40% shareholder, DirecTV. Prior to December 2011, Fox owned a minority interest in FPAS, with Liberty Media Corporation ("Liberty")[3] and Hicks, Muse, Tate & Furst Incorporated ("Hicks Muse")[4] owning the remainder majority shares. *See* Fox Entertainment Group, Inc., Annual Report (Form 10-K) (Sept. 10, 2004), https://sec.report/Document/0001193125-04-154960/. In

---

[2] DirecTV is an American direct broadcast satellite service provider. AT&T acquired DirecTV in 2015 for approximately $67 billion. *See* AT&T, Inc., Annual Report (Form 10-K) (Feb. 18, 2016), https://www.sec.gov/Archives/edgar/data/732717/000073271716000147/ye15_10k.htm; *Was AT&T's Acquisition of DirecTV a Mistake?*, Forbes.com (Aug. 9, 2019), https://www.forbes.com/sites/greatspeculations/2019/08/09/was-atts-acquisition-of-directv-a-mistake/?sh=72abbe4d47d3.

[3] Liberty Media is an American media company that, through subsidiaries like Liberty Media International, provides distribution and video programming services to subscribers around the world. *See* Liberty Media Int'l, Inc., Annual Report (Form 10-K) (Mar. 14, 2005) https://www.sec.gov/Archives/edgar/data/0001284698/000103570405000145/d23026e10vk.htm. Among other assets, Liberty owns the Atlanta Braves baseball team.

[4] Hicks, Muse, Tate & Furst (later renamed HM Capital Partners, LLC) was a private equity firm engaged in various global investing strategies, including investments in Latin America. *See* Karen Scannell, *Investors in Hicks Muse Question Firm's Telecom-Securities Strategy*, Wall St. J. (Aug. 22, 2000), https://www.wsj.com/articles/ SB96689418794464560; Karen Scannell, *How Hicks Muse Stumbled on Argentine Cable Deal*, Wall St. J. (June 19, 2002), https://www.wsj.com/articles/SB102443981359658800. Its co-founder, Thomas Hicks, also owned the Texas Rangers baseball team.

other words, for the first twelve years of the conspiracy charged against Mr. Lopez and Mr. Martinez, their employer, Fox, had a passive, minority interest in T&T, which was controlled by Torneos, Liberty, and Hicks Muse. As the 2017 trial record made clear, Burzaco was the driving force behind the alleged conspiracy, and yet somehow was able to shield his wrongdoing from Liberty, Hicks Muse, and DirecTV (and AT&T), as none of these entities are mentioned in a trial transcript that exceeds 5,000 pages.

The TSI thus alleges that the Copa Libertadores Scheme #2 began many years before Mr. Martinez and Mr. Lopez had any potential connection to it. But the TSI offers nothing specific to allow Mr. Martinez and Mr. Lopez to understand with particularity when they are alleged to have entered the scheme, and whether companies, such as Hicks Muse, Liberty, or DirecTV, were involved in the relevant transactions. Unlike Fox, Hicks Muse, Liberty, and DirecTV are not named in the TSI, despite their affiliation with Torneos—that is, Burzaco—during the vast majority of the charged conspiracy.

Moreover, the contracts at issue—those that originally acquired the broadcasting rights for the Copa Libertadores or the myriad contracts executed in connection with the media rights to the Copa Libertadores tournament, including contracts that extended ownership of the rights, provided production services, or licensed either rights or services to additional companies—were negotiated and executed long before Mr. Lopez and Mr. Martinez held the relevant roles at Fox. For example, in 2005, 2006, and 2008, well before Fox's majority ownership of T&T, T&T entered into consulting services agreements with companies on which the government focused at the 2017 trial and alleged to be sham agreements, executed for the purpose of paying bribes to CONMEBOL officials. Whether it is alleged that Mr. Martinez and Mr. Lopez joined the conspiracy prior to, after, or contemporaneously with, the negotiation of any of these contracts is critical to the

5

testimony they would seek to elicit and the documentary evidence that they would present at trial. None of that information is set forth in the TSI, the 2017 trial record, or the discovery.

## II. ARGUMENT

### A. The TSI alleges general, not specific, charges against Mr. Lopez and Mr. Martinez.

The government characterizes the TSI as a "lengthy roadmap" (*See* Gov't Opp'n. Br. 13, ECF No. 1556) (hereinafter "Gov't Opp'n."), yet the government fails to articulate *where* in that roadmap the charges against Mr. Lopez and Mr. Martinez are alleged with any particularity, because they cannot – such allegations do not exist. Indeed, to the extent the TSI is a "roadmap," it is entirely focused on the RICO case that is not charged against Mr. Lopez and Mr. Martinez. The charges against Mr. Lopez and Mr. Martinez are constrained to four, generally worded paragraphs that provide no detail whatsoever about their knowledge of the conspiracy. *See* TSI, ECF No. 1319. In addressing the paragraphs naming Mr. Lopez and Mr. Martinez, the government simply repeats the language from the TSI but offers no explanation as to how those paragraphs provide any particularity about the charges against them. (Gov't Opp'n. 6.)

In the 190-paragraph TSI, four paragraphs discuss, in the most basic and general terms, the Copa Libertadores Scheme #2 charged against Mr. Lopez and Mr. Martinez. (TSI, ¶¶ 71-74, ECF No. 1319.) The first of those paragraphs, Paragraph 71, does not name either Mr. Lopez or Mr. Martinez; rather, it generally describes that in 1999, CONMEBOL acquired and consolidated the broadcasting rights to the Copa Libertadores. (*Id.* at ¶ 71.) Paragraph 72, which also makes no mention of Mr. Lopez or Mr. Martinez, states that between 1999 and 2015, T&T acquired the exclusive worldwide broadcasting rights to each edition of the Copa Libertadores through 2018. (*Id.* at ¶ 72.)

6

Mr. Lopez and Mr. Martinez are named, for the first time, in Paragraphs 73-74. Paragraph 73 alleges, without any specificity, that sometime between 2005 and 2015, they, along with three other named defendants, but "together with others," "agreed to pay, did pay and facilitated the concealment of annual bribe and kickback payments to" fourteen CONMEBOL officials, in exchange for the officials' support of T&T as the holder of the rights. (*Id.* at ¶ 73.) Paragraph 73 contains nothing specifically alleging when Mr. Lopez or Mr. Martinez agreed to pay, did pay, or facilitated the concealment of such bribes, how they did so, or how it is alleged that they knew that such bribes were paid or concealed.

Paragraph 74 provides no further detail on the charges, nor does it even appear to allege any illegal conduct. (*See id.* at ¶ 74.)  It alleges that Mr. Lopez and Mr. Martinez "relied on loyalty secured through the payment of bribes to certain CONMEBOL officials in connection with the Copa Libertadores to advance the business interests of Fox beyond the Copa Libertadores, including by obtaining confidential information from Co-Conspirator# 1 regarding bidding for the rights to broadcast the 2018 and 2022 World Cup tournaments in the United States."  (*Id.*) Paragraph 74 contains no allegation that Mr. Lopez or Mr. Martinez knew that bribes were being paid, how they would have known bribes were being paid, or when such bribes were paid; indeed, it alleges that Mr. Lopez's and Mr. Martinez's employer seemingly benefitted from, but took no part in, the scheme. (*See id.*)

Mr. Lopez and Mr. Martinez are not, as the government argues, attempting to lead the Court to read certain paragraphs of the TSI in isolation. (Gov't Opp'n. 13.)  To the contrary, they invite the Court to read the TSI in its totality and press the government to answer where in the TSI it is alleged, with sufficient particularity, the specifics that they are to prepare to defend.

7

**B.     The 2017 trial is not the notice to Mr. Lopez and Mr. Martinez that the government claims it to be.**

The government has conceded that the 2017 trial was not directed at Mr. Lopez and Mr. Martinez, and the evidence presented therein did not concern their knowledge of, or involvement in, the charged conspiracies. In fact, prior to filing its Opposition, the government agreed with Defendants that the 2017 trial failed to provide notice of the charges against them. On October 17, 2020, in opposing Defendants' motion to compel, the government stated: "because the evidence at the 2017 trial was not directed at establishing the involvement of the Defendants, who were not on trial, *it provides no basis for inferring any evidentiary shortcoming in this case*." (Gov't. Opp'n Br. Mtn. to Compel 2, n.1, ECF No. 1444) (emphasis added). During the November 20, 2020 hearing on Defendants' motion to compel, the government acknowledged that the 2017 trial record "[left] *aside important elements, including, likely, the main one, which is the knowledge and participation of these defendants*[]."[1] (Hearing Tr. at 31, Nov. 20, 2020) (emphasis added).

Despite this, the government now predicts that the ensuing trial of Mr. Lopez and Mr. Martinez will be a re-trial of the 2017 trial, and argues that Defendants "have a preview of the types of questions the government may ask witnesses during the second trial, as well as the types of arguments the government may make before a jury." (Gov't Opp'n. 15.) The government's reliance on a "preview" of a sprawling 2017 trial in which Mr. Martinez and Mr. Lopez had *no role*, is not sufficient to give these new defendants notice of their alleged conduct. The 2017 trial record speaks for itself: there was no testimony or documentary evidence presented that gives any specifics regarding the allegations against Mr. Lopez and Mr. Martinez. In a six-week trial, which generated 5,528 pages of trial transcript, Mr. Lopez is referenced seven times and Mr. Martinez is referenced four times, all in vague references: some in connection to business meetings which,

8

according to the governments' own witness, were unrelated to bribery, or references that were simply made in passing.[5]

### C. Mr. Lopez and Mr. Martinez seek no more than that which the Court ordered the government to provide Mr. Napout.

The government argues that the Court previously rejected a similar request made by Mr. Napout when the Court granted, in part, Mr. Napout's request for a bill of particulars. (*See* Order, ECF No. 542.) As an initial matter, the Court should consider that its prior rulings were made with respect to different defendants, charged with different offenses, who raised different arguments. In any event, Mr. Martinez and Mr. Lopez are seeking a similarly narrow ruling as that which the Court ordered with respect to the charges against Mr. Napout: to know which transactions—such

---

[5] The entirety of the references to Mr. Lopez and Mr. Martinez in the 2017 trial include: a 2013 meeting concerning Fox Sports presence in Brazil, a 2014 Miami meeting, and five total references where either Mr. Lopez or Mr. Martinez were mentioned by name in passing. Mr. Burzaco testified that he attended a 2013 meeting in London, separate and apart from any meetings he had on the same day. The purpose of the meeting involving Mr. Martinez and Mr. Lopez was to discuss "Fox Sports' interest in having a tighter and a stronger link and relationship with soccer executives [and] to have more Brazilian soccer content." (Trial Tr. at 498, Nov. 15, 2017.) Nothing about that meeting relates to the charges against Mr. Lopez and Mr. Martinez. (Trial Tr. at 563, Nov. 15, 2017.) The second mention of Mr. Lopez and Mr. Martinez, also during Mr. Burzaco's testimony, concerned a September 2014 meeting in Miami attended by Mr. Burzaco, Luis Bedoya, Juan Angel Napout, Mr. Lopez, and Mr. Martinez. Despite alleging that Defendants "knew" about the structure that funded bribe payments, Mr. Burzaco provided no foundation for his testimony; articulated no basis for how Mr. Lopez or Mr. Martinez "knew"; and offered no specifics as to when they acquired such "knowledge." Mr. Burzaco failed to mention that the "structure" he was referring to had been in place since August 2004, when T&T Netherlands first acquired the Copa Libertadores rights, and long before Mr. Martinez or Mr. Lopez became involved with T&T. Thus, Mr. Burzaco's testimony adds nothing to how it is alleged that Mr. Martinez and Mr. Lopez knew about the funding for bribe payments. The remaining four references to Mr. Lopez, and one reference to Mr. Martinez, are brief, and without explanation or detail: Mr. Lopez's name is mentioned three times during cross-examination of Mr. Burzaco about an email in which Mr. Lopez asked Mr. Burzaco to introduce him to Julio Grondona (Trial Tr. at 7337, Nov. 15, 2017); and IRS Agent Steven Berryman read Mr. Lopez's and Mr. Martinez's names from a list of authorized signatories to T&T's Interaudi Bank account, which Mr. Lopez signed in January 2015, and Mr. Martinez signed in December 2014 (Trial Tr. at 3378, Dec. 7, 2017.)

9

as which contracts—the government will seek to prove Mr. Martinez and Mr. Lopez knew to be tainted by an unlawful conspiracy. (*Id.* at 21.) Like the Court recognized for Mr. Napout (to whom it granted relief), Mr. Martinez and Mr. Lopez are "accused of having committed unlawful acts in connection with a category of transactions, but without being given notice of which specific transactions falling within that category are alleged to have been tainted by unlawful conduct." (*Id.*)

### III. CONCLUSION

The information sought by Mr. Martinez and Mr. Lopez through their motion for a bill of particulars is necessary to the preparation of their respective defenses. Mr. Martinez and Mr. Lopez respectfully request the Court enter an Order granting their motion, and directing the government to provide a bill of particulars as requested.

Respectfully submitted,

/s/ Steven J. McCool
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 450-3370
Fax: (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com

                                        /s/ Samuel A. Josephs
SAMUEL A. JOSEPHS* (admission pending)
sjosephs@spertuslaw.com
PAYTON J. LYON* (admission pending)
plyon@spertuslaw.com

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700


                                        /s/ Michael T. Cornacchia
MICHAEL T. CORNACCHIA

                                        /s/ Ramon A. Abadin
RAMON A. ABADIN

*Counsel for Carlos Martinez*


                                        /s/ John Gleeson
JOHN GLEESON
jgleeson@debevoise.com
DAVID SARRATT
dsarratt@debevoise.com
MARISA R. TANEY
mrtaney@debevoise.com
MICHAEL McGREGOR
mcmcgregor@debevoise.com

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000

*Counsel for Hernan Lopez*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of New York Electronic Document Filing System (ECF) and the document is available on the ECF system.


    /s/ Steven J. McCool
STEVEN J. McCOOL