UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 15-cr-252 (PKC) |
| CARLOS MARTINEZ, and ) | |
| HERNAN LOPEZ ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND FOR LACK OF SPECIFICITY AS TO DEFENDANTS HERNAN LOPEZ AND CARLOS MARTINEZ**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** ................................................................................................................................. 3

I.  **THE GOVERNMENT'S OPPOSITION SIDESTEPS THE SERIOUS POST-*SKILLING* VAGUENESS CONCERNS THAT ARE SQUARELY PRESENTED HERE** .................................................................................................................................. 3

   A.  The Supreme Court's Recent Vagueness Decisions Highlight the Persistent Vagueness Problem Presented Here. ................................................................. 3

   B.  The Government's Response Avoids the Central Post-*Skilling* Vagueness Concerns that Have Plagued Courts by Adopting a Theory Entirely Untethered to Any Positive Law. ........................................................................................ 5

   C.  The Fundamental and Persistent Vagueness Problem Here Cannot Be Dismissed as an Ordinary Circuit Split. ............................................................................ 9

II. **THE TSI FAILS TO ANSWER THE MOST BASIC QUESTIONS AS TO THE DEFENDANTS' INVOLVEMENT IN THE CHARGED CONSPIRACY** .................... 10

**CONCLUSION** ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*Blachly v. United States*, 380 F.2d 665 (5th Cir. 1967) ................................................................. 7

*Johnson v. United States*, 576 U.S. 591 (2015) ............................................................... *passim*

*McNally v. United States*, 483 U.S. 350 (1987) ............................................................................ 1

*Ortiz v. N.Y.S. Parole in Bronx*, 586 F.3d 149 (2d Cir. 2009) ....................................................... 9

*Poupore v. Astrue*, 566 F.3d 303 (2d Cir. 2009) .......................................................................... 10

*Sorich v. United States*, 555 U.S. 1204 (2009) ............................................................................. 3

*United States v. Alfonso,* 143 F.3d 772 (2d Cir. 1998) ................................................................ 10

*United States v. Bahel,* 662 F.3d 610 (2d Cir. 2011) .................................................................7, 8

*United States v. Barry*, 757 F. App'x 139 (3d Cir. 2018) ............................................................. 9

*United States v. Brumley*, 116 F.3d 728 (5th Cir. 1997) ............................................................... 7

*United States v. Coppola*, 671 F.3d 220 (2d Cir. 2012) ................................................................ 4

*United States v. Davis*, 139 S. Ct. 2319 (2019) ................................................................. 3, 4, 5, 9

*United States v. Dimaya,* 138 S. Ct. 1204, 1212 (2018) ............................................................... 4

*United States v. Halloran*, 821 F.3d 321 (2d Cir. 2016) ...........................................................2, 7

*United States v. Jordan*, 364 F. Supp. 3d 670 (E.D. Tex. 2019) ................................................... 7

*United States v. L. Cohen Grocery Co.*, 255 U.S. 81 (1921) ........................................................ 9

*United States v. Lusk*, No. 15-CR-124, 2017 WL 508589 (S.D. W. Va. Feb. 7. 2017) .............2, 6

*United States v. Marcus*, 560 U.S. 258 (2010) .............................................................................. 9

*United States v. Napout*, 963 F.3d 163 (2d Cir. 2020) ....................................................... *passim*

*United States v. Rybicki*, 354 F. 3d 124 (2d Cir. 2003) .........................................................5, 8, 9

*United States v. Skilling*, 561 U.S. 358 (2010) .................................................................. *passim*

*United States v. Smith*, 985 F. Supp. 2d 547 (S.D.N.Y. 2014) ..................................................... 6

*United States v. Yannotti*, 541 F. 3d 112 (2d Cir. 2008) ............................................................. 10

**STATUTES**

18 U.S.C. § 666 ............................................................................................................................. 8

18 U.S.C. § 924(c)(3)(B) ........................................................................................................... 3, 4

18 U.S.C. § 924(e) ........................................................................................................................ 4

18 U.S.C. § 1341 ........................................................................................................................... 6

18 U.S.C. § 1346 .................................................................................................................. *passim*

**RULES**

Federal Rule of Criminal Procedure 7 .................................................................................... 3, 11

Federal Rule of Criminal Procedure 12(b)(3)(B) ......................................................................... 1

**PRELIMINARY STATEMENT**

Defendants Hernan Lopez and Carlos Martinez file this reply in further support of their motion to dismiss Counts Nine through Twenty-One of the Third Superseding Indictment ("TSI") under Rules 12(b)(3)(B)(iii) and 12(b)(3)(B)(v).

The government has charged Mr. Lopez and Mr. Martinez in an honest services fraud conspiracy that requires their breach of an alleged fiduciary duty. The honest services fraud statute, 18 U.S.C. § 1346, is silent on the contours of that duty, and to whom it is owed. Although the Supreme Court endeavored to save the entirety of the honest services statute in *United States v. Skilling*, 561 U.S. 358 (2010), limiting its application to what it viewed as the "core" of honest services decisions prior to *McNally v. United States*, 483 U.S. 350 (1987), a disarray of cases since *Skilling* have highlighted what Justice Scalia pointed out was the remaining "fundamental indeterminacy: the character of the 'fiduciary capacity' to which the bribery and kickback restriction applies." *Skilling*, 561 U.S. at 421 (Scalia, J., concurring in part). Here, the government alleges Mr. Lopez and Mr. Martinez did not breach their fiduciary duty to their employer, Fox, but that they participated in a conspiracy in which foreign employees breached their fiduciary duties to a foreign organization that did not even adopt a code of ethics that prohibited the alleged conduct until thirteen years into the charged conspiracy. As applied, the honest services statute is unconstitutionally vague.

The government responds with a simple tautology—that *Skilling* limited honest services prosecutions to allegations of bribery and kickbacks, and because this case allegedly involves bribery and kickbacks, that should be the end of the inquiry. This completely ignores the problems left unaddressed in *Skilling* that continue to plague courts, including "the permissible legal sources of the fiduciary duty" and "the nature or scope of the fiduciary duty, such that a

defendant's breach of this obligation would satisfy the fiduciary duty requirement of honest services fraud." *United States v. Lusk*, No. 15-CR-124, 2017 WL 508589, at *9 (S.D. W. Va. Feb. 7. 2017) (collecting cases). As *Lusk* flatly observed, "numerous courts have addressed this issue—directly or indirectly—and reached wildly different determinations as to the permissible sources of fiduciary duties that can sustain an honest-services offense." *Id.* at *10.

The Second Circuit correctly recognized this problem in *United States v. Napout*, observing with understatement that there are "lingering ambiguities in § 1346," but it understandably declined to answer the question on plain error review. 963 F.3d 163, 183 (2d Cir. 2020) (quoting *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016). Although the government seeks to characterize these divergent interpretations as garden-variety statutory interpretation, the statute here leaves nothing in its text to interpret. The Supreme Court's recent vagueness jurisprudence makes clear that where, as here, "the experience of the federal courts [illustrates] the unavoidable uncertainty and arbitrariness" of a statute, *Johnson v. United States*, 576 U.S. 591, 605 (2015), the Court will end the tortured search for limiting constructions and invalidate the statute.

On this motion, the Court need not find that the honest services statute is unconstitutional on its face, but rather that it is unconstitutionally vague as applied to the specific facts of this case, which push the inherent ambiguities in § 1346 beyond any workable boundaries, territorial or conceptual. The Court would be required to find an alleged breach of fiduciary duty not by the defendants' or a public official's violation of a state or foreign law, but instead by an alleged violation of a private arrangement between foreign private citizens and foreign private organizations with no grounding whatsoever in the violation of any positive legal duty, foreign or domestic. This would give the government free reign to police any type of "ethically

questionable conduct" among private parties, with no ascertainable limiting principle. *See Sorich v. United States*, 555 U.S. 1204 (2009) (Scalia, J., dissenting from denial of petition for writ of certiorari).

On top of the vague statutory text, the TSI itself gives the defendants no fair notice of what it is they are alleged to have done to participate in the charged conspiracy. Contrary to the government's argument, it is of no significance that other defendants were convicted of "the very same wire fraud conspiracy" charged here. Opp'n 4, 30 n.10. Despite its length, both the TSI and the record of the prior trial fail to provide an answer to the most basic questions here, including when Mr. Lopez and Mr. Martinez allegedly joined the charged conspiracy and what actions they took to further its object. The TSI should accordingly be dismissed because it fails to meet the standard set forth by Federal Rule of Criminal Procedure 7(c)(1).

## ARGUMENT

### I. The Government's Opposition Sidesteps the Serious Post-*Skilling* Vagueness Concerns That Are Squarely Presented Here

#### A. The Supreme Court's Recent Vagueness Decisions Highlight the Persistent Vagueness Problem Presented Here.

The Supreme Court has shown recently that it will not hesitate to invalidate criminal statutes that are hopelessly vague—even when doing so goes against decades of practice and implicates hundreds of prior convictions. *See United States v. Davis*, 139 S. Ct. 2319 (2019) (finding 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague). The Second Circuit deliberately did not rule on the merits of a vagueness challenge in this case because the issue had not been adequately presented in the district court. *See Napout*, 963 F.3d at 181–84. As the government is quick to point out, one member of the panel would have reached the merits of that issue and resolved it in the government's favor, *id*. at 189–90 (Hall, J., concurring), but the majority of the panel clearly viewed the question as dangerous enough to avoid if at all possible. With good

3

reason: the Supreme Court's recent vagueness jurisprudence strongly signals the Court is poised to reign in the type of prosecutorial overreaching on display here.

In *Johnson v. United States*, the Supreme Court took up, for the fifth time, the viability of the residual clause under the Armed Career Criminal Act, 18 U.S.C. § 924(e). 576 U.S. at 593. Twice before, the Court rejected arguments from then-dissenting justices that the clause violated the Constitution's prohibition on vague criminal laws. *Id.* at 594. But in *Johnson*, the Court recognized that "the error of having rejected a vagueness challenge manifests itself precisely in subsequent judicial decisions: the inability of later opinions to impart the predictability that the earlier opinion forecast." *Id.* at 605. Again, in *United States v. Dimaya*, the Court found that a provision of the Immigration and Nationality Act was unconstitutionally vague because application of the provision was unpredictable, noting again that it is the role of "Congress, rather than the executive or judicial branch, to define what conduct is sanctionable and what is not." 138 S. Ct. 1204, 1212 (2018). Most recently in *United States v. Davis*, recognizing a longstanding struggle among the lower courts, the Court found that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague, noting that "[v]ague laws . . . hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct." 139 S. Ct. at 2323.

Like the statutes at issue in those cases, the Second Circuit has recognized that § 1346 "provides no textual guidance about the duties whose violation will amount to a deprivation of honest services." *United States v. Coppola*, 671 F.3d 220, 235 (2d Cir. 2012) (contrasting the undefined language of § 1346 with the Hobbs Act, which specifically enumerates certain duties and is not a "catch-all provision under which [individuals] can be sued on any ground of misconduct") (internal citations and quotation marks omitted). Given the inherent vagueness of

4

the text, courts have struggled to determine "whether, to be actionable under § 1346, a fiduciary duty 'must' arise from 'positive federal or state law,' or whether 'merely general principles, such as the obligations of loyalty and fidelity that inhere in the employment relationship' can suffice." *Napout*, 963 F. 3d at 183 (quoting *Skilling*, 561 U.S. at 417).

The government, of course, is counting on the "general principles" side of that debate to carry the day, as it has articulated no positive legal duty that was violated, and even (successfully) sought to exclude evidence of any in the prior trial. *See* ECF Nos. 718 at 17–20, 853 at 16–28. Given the trend of *Johnson*, *Dimaya*, and *Davis*, the *Napout* Court understandably proceeded with caution, going to significant lengths to explain why it could properly avoid deciding a question it acknowledged "remains unsettled"—"whether a foreign employee's duty to his foreign employer qualifies as an actionable element under § 1346." *Napout*, 963 F. 3d at 184. Although no case has resolved that specific question, as explained below, the values that have animated recent vagueness jurisprudence supply a clear answer here that the statute is unconstitutionally vague as applied to Mr. Lopez and Mr. Martinez, particularly where, as here, the government attempts to impose its general principles of "ethical conduct" across the planet.

> B. The Government's Response Avoids the Central Post-*Skilling* Vagueness Concerns that Have Plagued Courts by Adopting a Theory Entirely Untethered to Any Positive Law.

In response to these significant concerns, the government offers a truism – that "one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." Opp'n 10 (citing *United States v. Rybicki*, 354 F. 3d 124, 129 (2d Cir. 2003) (en banc)). That is, because *Skilling* limited honest services prosecutions to those cases involving allegations of bribery and kickbacks, and because this case involves allegations of bribery and kickbacks, the defendants have no room to complain. Opp'n 12, 16. But that logic would apply

5

to any post-*Skilling* honest services case and completely avoids the significant vagueness concerns courts have acknowledged that *Skilling* did not resolve.

In particular, even the "core" honest services case law *Skilling* preserved left open critical questions, including the source and character of the underlying fiduciary duty obligation in 18 U.S.C. §§ 1341 and 1346. *Skilling*, 561 U.S. at 417–18 (Scalia, J. concurring in part) (calling this "the most fundamental indeterminacy" left unresolved by *Skilling*). Courts have considered the source of fiduciary duty to be state law, federal law, or various other sources including standards as vague as moral uprightness and public policy. *Id.* (collecting cases); *see also United States v. Smith*, 985 F. Supp. 2d 547, 596 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016) ("[T]he Court must also determine the core sources of law from which this duty of loyalty may be derived."). Courts have further disputed the presence or necessity of additional requirements for private individuals, such as whether the defendant must use his fiduciary position for his own gain, or whether the victim was required to suffer material loss. *Skilling*, 561 U.S. at 419 (Scalia, J. concurring in part).

And just as with the statute at issue in *Johnson*, the vagueness issues with § 1346 have persisted long after *Skilling*. *See e.g., Smith*, 985 F. Supp. at 592 ("[T]he term 'fiduciary duty' has different meanings in different contexts . . . . [Defendants] conceivably could have owed a fiduciary duty to those entities and individuals under federal but not state law, or under state law but not federal; under general trust but not agency law, or under agency law but not general trust."). As *Smith* observed, "[t]he circuits appear to be split into three camps: those that permit the fiduciary duty to be derived from various sources, including state, federal, and common law; those that require the fiduciary duty to be derived from state law; and those that require the fiduciary duty to be derived from federal law." *Smith*, 985 F. Supp. 2d at 598; *see also Lusk*,

2017 WL 508589, at *10 (collecting the "wildly different determinations as to the permissible sources of fiduciary duties that can sustain an honest-services offense.")  And as in *Napout*, courts have done judicial gymnastics to avoid answering the question.  *See Halloran*, 821 F.3d at 337–338 (concluding that whether the source of duty is federal law or state law the defendant would still be liable); *Napout*, 963 F.3d at 183-84 (avoiding the vagueness question under plain error review).  But as one court recently observed,"[t]here [is] nothing to suggest that Congress meant 'to leave to courts and prosecutors, in the first instance, the power to define the range and quality of services [an] employer may choose to demand of its employees.'"  *United States v. Jordan*, 364 F. Supp. 3d 670, 674 (E.D. Tex. 2019) (citing *United States v. Brumley*, 116 F.3d 728, 733–35 (5th Cir. 1997) (en banc)) (finding that violation must be defined by a state statute).

Perhaps hoping to avoid the question itself, the government here does not attempt to base its theory in *any* positive source of law—be it foreign, federal, state or common law.  Instead, the government points out that any evidence of foreign law was excluded from the 2017 trial, and therefore presumably that the fiduciary duty need not arise from any law at all (or perhaps an assumption that foreign law should necessarily mirror our own).  Opp'n 16.  The government's brazen theory here recalls the worst of the pre-*McNally* case law, in which courts articulated the duty of honest services in "hopelessly undefined" but "astoundingly broad language"—relying on notions of "accepted moral standards" and "fundamental honesty, fair play and right dealing in the general and business life of members of society."  *Skilling*, 561 U.S. at 418 (Scalia, J., concurring) (quoting *Blachly v. United States*, 380 F.2d 665 (5th Cir. 1967)).  As explained above, the Supreme Court has recently shown it has no patience for such an approach.

The Second Circuit's decision in *United States v. Bahel,* 662 F.3d 610 (2d Cir. 2011)*,* on which the government relies, is not to the contrary; indeed, *Bahel* illuminates how different this

7

case is from other honest services prosecutions in a foreign context. In *Bahel*, the government specifically alleged that the defendant not only violated rules of the United Nations, an organization headquartered in and receiving its largest financial contributions from the United States, but violated federal laws as well, namely Federal Programs Bribery, 18 U.S.C. § 666. *Bahel,* 662 F.3d at 630-32. The government's theory here is untethered to the violation of any positive legal duty whatsoever.

The government's reliance on *United States v. Rybicki* is similarly misguided. The court in *Napout* clearly indicated that *Rybicki* was only a source of *possible* guidance, and there are good reasons to distinguish it. *Napout*, 963 F.3d at 183–84 (emphasis added). In *Rybicki* the Second Circuit upheld the validity of § 1346 as applied to lawyers who used the mails and wires to bribe claims adjusters to whom they had submitted claims, in effect depriving insurance companies of the "honest services" of their adjusters. *Rybicki*, 354 F.3d at 132. *Rybicki* focused on defining the conduct encompassed by honest services fraud, because it came down before the Supreme Court definitively settled that issue in *Skilling*. *Id.* at 136. In making its determination, *Rybicki* explicitly recognized the tortured history of § 1346 violations but accepted the disparity as "inherent" and "common," *id.* at 143, a statement that has invited significant disagreement. *See id.* at 155 (Jacobs, Walker, Jr., Cabranes, and Parker, Jr., JJ., dissenting); *see also Skilling*, 561 U.S. at 415 (Scalia, Thomas, and Kennedy, JJ., concurring). But *Rybicki* did not address the core question here: whether the honest services statute is so vague that it can be read to govern the relationship between foreign employees and their employers—completely absent any positive legal obligation that was breached and based on a presumptive export of American "general principles" of upright dealing. Indeed, the only specific obligation the government has pointed to here is not any law, but merely an employee code of ethics that was adopted thirteen years into

8

the charged conspiracy. In any event, the *Rybicki* Court's analysis was, as in *Napout*, on plain error review, a posture that is by its nature extremely deferential in honest services cases because the law is certainly not "clear or obvious." *Napout*, 963 F.3d at 183 (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

    C. <u>The Fundamental and Persistent Vagueness Problem Here Cannot Be Dismissed as an Ordinary Circuit Split</u>.

Contrary the government's contention, the disagreement among circuit courts here is not merely a run-of-the-mill circuit split arising from "the unavoidable ambiguities of language." Opp'n 10 (citing *Ortiz v. N.Y.S. Parole in Bronx*, 586 F.3d 149, 159 (2d Cir. 2009)). Here, the statute itself does not contain *any* language beyond the amorphous concept of the "intangible right to honest services." Unlike with an ordinary circuit split arising from competing canons of construction, the Supreme Court has made clear that where perennial confusion arises from a fundamental vagueness in the statute, it will not hesitate to invalidate the statute and require Congress to "try again." *Davis*, 139 S. Ct. at 2323.

The "failure of 'persistent efforts to establish a standard' can provide evidence of vagueness," *Johnson*, 576 U.S. at 598 (alteration in original) (quoting *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 91 (1921)). And here, as in *Johnson*, "the experience of the federal courts leaves no doubt about the unavoidable uncertainty and arbitrariness of adjudication under [the statute]." *Johnson*, 576 U.S. at 605; *United States v. Barry*, 757 F. App'x 139, 141 (3d Cir. 2018) (citing divergent judicial opinions as "evidence that reasonable minds may differ as to [a statute's] meaning and application and that [the statute] may be unconstitutionally vague."). The appropriate judicial response at this point is to find the statute unconstitutionally vague as applied to these facts.[1]

---

[1] The defense also contends that the TSI impermissibly seeks to apply the wire fraud

9

## II. The TSI Fails to Answer the Most Basic Questions as to the Defendants' Involvement in the Charged Conspiracy

Despite a 190-paragraph indictment, the government has not (and refuses to) identify when Mr. Lopez and Mr. Martinez joined the alleged conspiracy or what they did to participate in it. Additionally, the TSI fails to allege a specific intent to defraud, material deception, knowing participation and an applicable *quid pro quo*.

The government recognizes that it must state the "time and place" of the alleged crimes, yet attempts to defend the TSI by stating that a ten year time span is sufficiently specific enough to apprise the Defendants of their conduct. Opp'n 25 (citing *United States v. Yannotti*, 541 F. 3d 112, 127 (2d Cir. 2008). But as the government does not dispute, the TSI alleges a scheme that began many years before Mr. Lopez or Mr. Martinez could have had any potential connection to it. Notwithstanding any dates of wire transfers provided in Counts Ten through Twenty-One, the government has not provided any approximate date that would apprise Mr. Lopez and Mr. Martinez when they joined the alleged conspiracy, or what it is they did to support it.

The government's repeated references to the 2017 trial do not shed light on these basic questions. *See e.g.*, Opp'n 4, 15, 22, 30, 31. A district court does not look beyond the face of the indictment in ruling on a 12(b) motion. *See United States v. Alfonso,* 143 F.3d 772, 776 (2d Cir. 1998). In any event the government does not point to anything in the voluminous trial record that would supply the answers. These are fundamental deficiencies that fail to meet the

---

statute extraterritorially. Where an alleged scheme involves the acquisition of foreign broadcast rights for foreign soccer matches from foreign organizations, this is not foreign conduct that is merely incidental, but is the overwhelming "focus" of the scheme. It is rather the spare domestic aspects of the charge scheme that are truly incidental. While we acknowledge that the Second Circuit's decision in *Napout* is controlling on this issue, given conflicting authority and its reliance on inapplicable case law, we reiterate our argument here in accordance with the well-established rules of this court. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (A "claimant must present the relevant legal arguments in that forum in order to preserve them for appellate review.").

requirements of Rule 7.

## CONCLUSION

For the foregoing reasons, Mr. Lopez and Mr. Martinez respectfully request that the Court dismiss Counts Nine through Twenty-One of the TSI against them.

Dated: September 3, 2021           Respectfully submitted,

By:   /s/ *David Sarratt*

David Sarratt
John Gleeson
Michael C. McGregor
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000
jgleeson@debevoise.com
dsarratt@debevoise.com
mcmcgregor@debevoise.com


*Counsel for Hernan Lopez*

*/s/ Steven McCool*
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone:  (202) 450-3370
Fax:  (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com


*/s/  Samuel Josephs*
SAMUEL A. JOSEPHS
sjosephs@spertuslaw.com
PAYTON J. LYON
plyon@spertuslaw.com

SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700


*/s/ Michael T.Cornacchia*
MICHAEL T. CORNACCHIA

*/s/  Ramon A. Abadin*
RAMON A. ABADIN

*Counsel for Carlos Martinez*

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September 2021, the foregoing was served electronically on the counsel of record through the U.S. District Court for the Eastern District of New York Electronic Document Filing System (ECF) and the document is available on the ECF system.

                                                   /s/ *David Sarratt*
                                                 David Sarratt