UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,

        - against -

HERNAN LOPEZ and CARLOS MARTINEZ,

        Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CR-252 (S-3) (PKC)

PAMELA K. CHEN, United States District Judge:

Before the Court is the request of Defendants Carlos Martinez and Hernan Lopez (collectively, "Defendants") to issue subpoenas to PricewaterhouseCoopers ("PwC") or, alternatively, to Torneos y Competencias, S.A. ("Torneos" or "TyC"), and DirecTV, under Federal Rule of Criminal Procedure ("Rule") 17(c) to obtain documents and communications concerning investments by outside investors in Torneos, including DirecTV, encompassing the time period from January 1, 2007 through May 27, 2015. (Defendants' Motion ("Defs.' Mot."), Dkt. 1755.) On April 1, 2022, the Government filed an opposition to Defendants' request (*see* Government's Opposition ("Gov. Opp."), Dkt. 1763), and Defendants subsequently filed a reply (*see* Defendants' Reply ("Defs.' Reply"), Dkt. 1767). The Court denies Defendants' request for the following reasons.

As with Defendants' previous subpoena and letter rogatory requests, the Court finds that Defendants seek to embark on "a general fishing expedition" in violation of the fundamental principles of Rule 17.[1] *See United States v. Nixon*, 418 U.S. 683, 700 (1974) (internal quotation

---

[1] The Court has denied four earlier requests for subpoenas and letters rogatory filed by Defendants, finding them to be fishing expeditions, among other reasons. (*See* Dkts. 1551, 1693, 1697, 1723.) Furthermore, while the Court addresses below the merits of Defendants' current application, the belated timing of Defendants' application in itself could justify denial. As the Government notes, Defendants "first moved for a letter rogatory seeking a wide range of records from Torneos in August 2021, sixteen months after the third superseding indictment in this case

1

marks omitted). Despite being aware that a subpoena application must be relevant, admissible, and specific, Defendants seek over eight years' worth of unspecified documents and communications "tending to show that Burzaco hid the bribery schemes from other outside investors or partners." (Defs.' Mot., Dkt. 1755, at 4.) The productions Defendants seek are potentially vast: they (1) "concern[] investments by outside investors in TyC, including but not limited to communications between Alejandro Burzaco and TyC shareholders or potential investors in TyC, and internal TyC communications regarding the contemplated investment," and (2) include "communications, reports analyses, due diligence materials, financial audits, representations and warranties from DirecTV . . . relating to its investment in TyC." (*Id.*)

Defendants argue in conclusory fashion that the documents and communications they seek are "sufficiently likely" to contain information that tends to show that Burzaco concealed bribery schemes "from the outside investors or directed others to do so." (*Id.* at 4, 7, 9.) Defendants offer no basis for this conclusion. The Court previously rejected a subpoena application by Defendants that was supported by a single email chain containing two emails from Burzaco that Defendants claimed showed "Burzaco using four personal email accounts to communicate with co-conspirators," because, among other things, the email chain was "insufficient to convince the Court that this is not an attempt to conduct an impermissible fishing expedition into Burzaco's personal

---

was unsealed" (Dkt. 1763, at 10), yet did not include a request for the materials they now seek. Given that Burzaco's centrality to the bribery scheme and the conduct he undertook as part of that scheme have been clear from the outset of this prosecution (and as far back as the 2017 trial), there is no reason that Defendants could not have included the current request as part of their earlier application relating to Torneos. Relatedly, as the Government also notes but the Court need not resolve, subpoenaing Torneos via DirecTV, versus serving it with letter rogatory, may not be a legally appropriate or viable mechanism for obtaining discovery from Torneos, a foreign entity. (*Id*. at 11.)

email accounts." (*See* Memorandum and Order, Dkt. 1693, at 1–2.)  There is even less reason to grant the current application than the previously denied one.

The relevance and specificity of the proposed subpoenas cannot be demonstrated based on pure speculation.  The circumstances present in *Nixon* bear mention here.  In *Nixon*, the special prosecutor sought "certain tapes, memoranda, papers, transcripts or other writings relating to certain precisely identified meetings between the President and others."  418 U.S. at 688.  "The specific meetings and conversations [were] enumerated in a schedule attached to the subpoena."  *Id.* at n.5.  The special prosecutor "was able to fix the time, place, and persons present at these discussions" and, "[w]ith respect to many of the tapes," the special prosecutor "offered the sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time."  *Id.* at 688, 700.  "As for the remainder of the tapes, the identity of the participants and the time and place of the conversations, taken in their total context, permit[ted] a rational inference that at least part of the conversations relate[d] to the offenses charged in the indictment."  *Id.* at 700.  Based on this record, the Supreme Court concluded that "there was a sufficient likelihood that each of the tapes contain[ed] conversations relevant to the offenses charged in the indictment."  *Id.*

Here, by contrast, Defendants have not identified a single document or communication that they reasonably believe contains the purportedly relevant or material information, nor, indeed, any other evidence suggesting the existence of such materials.[2]  Defendants' application is thus a far

---

[2] In reality, Defendants' argument, though never clearly stated or even acknowledged, is that the requested materials will not show any report of bribery being conducted by Burzaco or Torneos.  In other words, Defendants argue that the *absence* of any report of bribery is potentially material to a defense that Burzaco duped everyone.  But even as to that theory of relevance, Defendants still offer no basis to believe that the broad swath of requested materials will reflect such omissions or, conversely, will contain communications with Burzaco about concealing his bribery activities.

3

cry from "specifically identifying the materials sought, and showing that they are relevant." *United States v. Brown*, No. 95-CR-168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995). As the Court has stated before, Rule 17(c) is not a "broad discovery device" and cannot be used to "undermine the discovery procedures set forth in Rule 16." *United States v. Maxwell*, 20-CR-330 (AJN), 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021).

Similarly, Defendants have not met their burden to demonstrate that the evidence they seek, even assuming it exists, is admissible. While Defendants are correct that "certain admissibility" is not required at this stage (Defs.' Mot., Dkt. 1755, at 8), they must still make a "sufficient preliminary showing" that the documents and communications they seek to subpoena contain admissible evidence, *Nixon*, 418 U.S. at 700. Defendants argue that the requested documents and communications are admissible to impeach Burzaco (*see* Defs.' Mot., Dkt. 1755, at 8–9) and to demonstrate Burzaco's *modus operandi* regarding his concealment of the bribery scheme (*see* Defs.' Reply, Dkt. 1767, at 1). Neither ground provides an evidentiary basis for admitting the requested materials.

First, as Defendants acknowledge (*see* Defs.' Reply, Dkt. 1767, at 1), the Government has represented that Burzaco will testify to concealing the bribery schemes (*see* Gov. Opp., Dkt. 1763, at 14), thus eliminating any impeachment value of the requested materials.[3] Moreover, "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701–02 (citing *United States v. Carter*, 15 F.R.D. 367, 371 (D.D.C. 1954)).

Second, "[t]o be admissible as proof of *modus operandi*, other act evidence must be so nearly identical in method as to ear-mark the act as the handiwork of the accused." *United States*

---

[3] In light of the Government's representation, the Court finds that Defendant Lopez's separate letter to the Government seeking the same documents as *Giglio* material (*see* Dkt. 1751) is moot.

4

*v. Martoma*, No. 12-CR-973 (PGG), 2014 WL 31213, at *4 (S.D.N.Y. Jan. 6, 2014) (internal quotation marks and brackets omitted). The Court is not persuaded that the bribery scheme Defendants describe regarding DirecTV and other outside investors "share[s] enough characteristics with the charged offenses that they share the 'signature' required for use in establishing a modus operandi under Rule 404(b)."[4] *United States v. Reese*, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (citing *United States v. Danzey*, 594 F.2d 905, 911 (2d Cir. 1979)). As the Government explains:

> [T]he context in which Mr. Burzaco and Torneos concealed the scheme from DirecTV was far different from the context at issue here in several respects. For one thing, in 2008, DirecTV acquired a stake in Torneos – primarily from other shareholders, not from Mr. Burzaco – whose business included production services, valuable local soccer rights in Argentina, and various other assets that had far more significance to DirecTV than Torneos's 25% economic interest in T&T Sports Marketing Ltd. ("T&T"), the partnership at the center of the charged schemes. By contrast, in 2011, the Defendants and [Twenty-First Century Fox, Inc. ("Fox")] acquired 100% ownership of Fox Pan American Sports (FPAS), which in turn owned the remaining 75% economic interest in T&T, whose core assets were the club tournament rights at issue in this case, procured at below-market rates through bribery. The primary mechanisms used by Mr. Burzaco and the Defendants to conceal the bribery at the core of their T&T partnership, including their reliance on a shell company in the Netherlands to "clean" T&T's books, had little bearing on the assets acquired by DirecTV in 2008.

(Gov. Opp., Dkt. 1763, at 13.)

Defendants proffer no description of the purported similarities between the DirecTV and Fox situations, stating only in conclusory fashion that "[t]he requested communications will illustrate the extent to which Burzaco hid the scheme from TyC's other outside investors, including DirecTV, in ways that directly *parallel* the specific means and methods by which, the defense will show at trial, he hid the bribery from Fox, including from Hernan Lopez and Carlos Martinez."

---

[4] With respect to Defendants' brief argument in the reply that the evidence they seek is admissible to show Burzaco's motivation "for hiding the bribery scheme from DirecTV" (Defs.' Reply, Dkt. 1767, at 1), such motive is irrelevant to the charged conduct.

5

(Defs.' Mot., Dkt. 1755, at 8 (emphasis added); *see also* Defs.' Reply, Dkt. 1767, at 1 ("[T]he specific tactics by which Mr. Burzaco [hid the bribery schemes from DirecTV] – his *modus operandi* – will reveal direct *parallels* with the ways in which we believe the evidence will show Mr. Burzaco hid the scheme from Fox." (second emphasis added).) This is simply not enough to justify the extraordinary application Defendants make at nearly the eleventh hour to obtain an array of documents and communications from third parties. Indeed, given the paucity of information provided by the defense, the Court is inclined to agree with the Government that the only commonality between the DirecTV and Fox bribery schemes is that "the primary 'means'" of hiding the scheme in both instances was just a failure to disclose." (Gov. Opp., Dkt. 1763, at 13.) This commonality plainly does not amount to a "signature" so as to make the requested material admissible as *modus operandi* evidence under Rule 404(b) in support of the defense's theory that Burzaco concealed the Fox-related bribery scheme from Defendants.[5]

## CONCLUSION

The Court finds that Defendants Hernan Lopez and Carlos Martinez have failed to show that their requested subpoenas seek relevant, admissible, and specific evidence. The Court therefore finds that issuance of the proposed subpoenas would be an improper exercise of its discretion under Rule 17(c). Accordingly, Defendants' motion is denied in its entirety.

SO ORDERED.

---

[5] It is worth noting that another significant dissimilarity between the DirecTV and Fox bribery schemes is that the Government intends to prove at trial that Burzaco "did not hide the [Fox] scheme from the Defendants – to the contrary, [the Government intends to prove that] the Defendants actively participated in the scheme and in concealing it from others at Fox[.]" (Gov. Opp., Dkt. 1763, at 12–13.) However, the Court does not rely on this dissimilarity in finding that the requested materials would not be admissible under Rule 404(b), since Defendants are entitled to their own view of the evidence and entitled to prove their defense through contrary *competent* evidence.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 16, 2022
      Brooklyn, New York