Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

James A. Mitchell
Tel: 646.346.8006
Fax: 212.223.1942
mitchellj@ballardspahr.com

October 9, 2026

***BY ECF***

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: United States v. Webb, et al., 15 Cr. 252 (PKC)**

Dear Judge Chen:

On behalf of the defendant Jose Maria Marin and the Estate of Jose Maria Marin (collectively, "Marin"), we write to provide the Court with this brief sur-sur-reply to the government's September 18, 2026 sur-reply to Marin's and other defendants' *coram nobis* petitions. Understanding that other counsel will respond to certain of the arguments in the government's September 18 submission,[1] we write to address only two points: (1) the government's discussion of the "'unfair treatment' argument" concerning its seemingly inconsistent reliance on a "resource-driven determination" to dismiss the *Lopez/Full Play* case while continuing its opposition to the *coram nobis* petitions; and (2) upon deciphering the government's chart in its sur-reply (Dot. 2140-1 at 8-10), the only argument in the government's initial opposition that it claims Marin did not address relating to the RICO conspiracy conviction.

**The "Unfair Treatment Argument"**

The government asserts that its opposition of the *coram nobis* petitions has nothing to do with its "resource-driven determination [to dismiss *Lopez/Full Play*] amid ongoing litigation by a different administration than which authorized the government's appeal." (*Id*. at 4). First, Marin filed his initial petition on December 14, 2023 (Dot. 2036). The government did not consent to that petition, which was held in abeyance while the *Lopez/Full Play* appeal took place. Nevertheless, when Marin later asked again for his petition to be expedited because of his declining health, the government opposed that request by a submission dated December 4, 2024 (Dot. 2052) that also argued Marin's petition failed to meet the continuing consequences element of a *coram nobis* petition and thus should be denied anyway. That December 4, 2024 submission was of course made by the very same "different administration" that the government now claims as a reason to differentiate Marin's case from *Lopez/Full Play*. This argument is belied by the facts.

1 Marin further joins in the arguments made in the sur-sur-reply of co-defendant Juan Angel Napout and the other *coram nobis* petitioners to the degree applicable.

Moreover, the government's sur-reply studiously ignores any reference to the substantial amount of work no doubt required to put together its 43-page, single-spaced initial opposition to the *coram nobis* petitions, as well as the time and resources spent on its current sur-reply. It would seemingly have been a lot less time-consuming to just consent to the petitions. Similarly unavailing is the assertion that its preservation of resources argument is not in conflict with the DPA agreement the government reached recently with the Jinkins defendants. If the government were really concerned with its expenditure of resources on the FIFA cases, why not just dismiss any remaining open indictments, including those of the Jinkins defendants?

The government also cites an interest in finality, asserting that the *coram nobis* petitioners are different because they have "final conviction[s]" and "seek the return of indisputably ill-gotten gains from victims to whom losses have long ago been returned." (Dot. 2140-1 at 4-5). This is circular. Calling the payments made by Marin and other defendants "indisputably ill-gotten gains" paid to "victims," puts the cart before the horse. The whole point of the *coram nobis* petitions is that, under the law, there were no crimes committed by Marin. Thus, the ill-gotten" nature of the monies at issue is very much in dispute, along with the notion of how there can be any victims of a non-crime. Also, the government itself chose to remit forfeiture funds and pay substantial restitution to FIFA and other soccer federations is an empty argument. Money is fungible, and there are ***indisputably*** sufficient funds in the government's forfeiture accounts to return Marin's money if the convictions are vacated. Lastly, to the degree the government tries to dodge this issue because the money is already with the "victims," it only further supports what Marin argued previously: the continued existence of the convictions is a significant collateral consequence because it severely hinders Marin's ability to pursue the return of those funds through civil litigation, given the collateral estoppel effect of those convictions.

**<u>The RICO Conspiracy Charge</u>**

As far as the government's claim in its sur-reply that "Marin does not mention RICO at all" (Dkt. 2140-1 at 10, n.9), that is just wrong. This very issue was discussed in Marin's initial *coram nobis* petition and that of co-defendant Napout (in which Marin joined). *See* Dkt. 2036 ("And, as detailed in Nap out's Petition, the RICO conspiracy and money laundering conspiracies of which Marin was convicted all rely on the viability of the underlying honest services fraud as a valid predicate. They became invalid once the fraud theory on which they are built became untenable."). To reiterate, once the underlying wire fraud and money laundering conspiracy convictions fall away, so does the RICO conspiracy charge on which they are grounded.

Thank you again for your attention to this matter.

Respectfully submitted,

/s/ *James A. Mitchell*

James A. Mitchell

cc: All Counsel of Record (via ECF and email)